FIDELITY BANK *v.* JOHN M. KRENISKY ET AL.
(AC 21862)

Lavery, C. J., and Foti and Dranginis, Js.

Argued June 5—officially released October 1, 2002

*John A. Keyes*, with whom, on the brief, was *Martin M. Looney*, for the appellant (defendants).

*David F. Borrino*, for the appellee (plaintiff).

*Opinion*

FOTI, J. In this foreclosure action, the defendants, John M. Krenisky and Frances G. Krenisky, appeal from

the summary judgment as to liability rendered by the trial court in favor of the plaintiff, Fidelity Bank. On appeal, the defendants claim that the court improperly (1) granted the plaintiff's motion for summary judgment by concluding that their special defenses were legally insufficient and (2) struck their six count counterclaim.[1] We affirm the judgment of the trial court.On April 3, 1987, the defendants executed a promissory note payable to the order of Connecticut Bank and Trust Company, which was secured with a mortgage for their property at 512 Yale Avenue in New Haven. The note and mortgage provided for monthly payments of principal and interest to the plaintiff. Following several assignments of the note and mortgage, the plaintiff became the holder and owner of both on October 31, 1995.

Following an audit of the plaintiff's files, it came to the plaintiff's attention that current property tax receipts for the defendants' property were absent. Thereafter, on May 29, 1996, the plaintiff demanded, in accordance with its rights under the mortgage documents, that the defendants provide such receipts. Having not received the property tax receipts as demanded and after confirming with the city of New Haven that the defendants had failed to pay their property taxes when such taxes became due, the plaintiff sent another demand letter to the defendants. The letter informed the defendants that they had thirty days to provide the plaintiff with copies of property tax receipts. It further informed them that failure to do so would result in the

---

[1] We note, as did the court, that even though the plaintiff's motion to strike the counterclaim preceded the granting of the motion for summary judgment, we will first address the trial court's decision to grant the motion for summary judgment before addressing its decision to grant the motion to strike the counterclaim. That is because our analysis of the decision to grant the motion for summary judgment necessarily involves a discussion of the defendants' special defenses, which form the basis of the counterclaim asserted in this action.

bank's setting up an escrow account, in accordance with its rights under the mortgage documents, for the purpose of paying present and future property taxes. Again, the defendants failed to perform as demanded, and the plaintiff paid the taxes to the city and set up an escrow account. The defendants refused to make any additional monthly payments into the escrow account. What followed was an extended dispute between the parties regarding the tax escrow account.

Regarding the defendants' refusal to make payments into the escrow account as a breach of their obligations under the mortgage documents, the plaintiff notified the defendants of their default and accelerated the entire debt. Thereafter, the plaintiff commenced its first foreclosure action, which the court dismissed under its dormancy program on June 2, 1999. On the basis of the default that gave rise to the first foreclosure action, the plaintiff commenced its second foreclosure action on July 12, 1999. In response, the defendants asserted various special defenses and filed a six count counterclaim. Upon the plaintiff's motion, the court struck the defendants' counterclaim, and the plaintiff filed a motion for summary judgment as to liability. Having found the defendants' special defenses to be legally insufficient, the court granted the plaintiff's motion for summary judgment. Subsequently, the court ordered foreclosure by sale, and this appeal followed. Additional facts will be discussed as necessary.

I

The defendants claim that the court improperly granted the plaintiff's motion for summary judgment despite their special defenses alleging that (1) the plaintiff gave them improper notice of default, (2) they had substantially complied with the terms of the note and mortgage, (3) the plaintiff violated the principles of good faith and faith dealing, (4) foreclosure was inequi-

table under the circumstances and (5) the parties had resolved the dispute by an accord and satisfaction. We will address each claim and special defense in sequence.

Before doing so, however, we set forth the standard of review that we employ when evaluating a court's decision to grant a motion for summary judgment. "On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [plaintiff] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Yancey* v. *Connecticut Life & Casualty Ins. Co.*, 68 Conn. App. 556, 558, 791 A.2d 719 (2002).

"Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly

presented to the court under Practice Book § 380 [now § 17-45]. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Citations omitted; internal quotation marks omitted.) *Yancey* v. *Connecticut Life & Casualty Ins. Co.*, supra, 68 Conn. App. 558–59.

Further, because the plaintiff sought summary judgment in a foreclosure action, which is an equitable proceeding, we note that "the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *LaSalle National Bank* v. *Freshfield Meadows, LLC*, 69 Conn. App. 824, 833, 798 A.2d 445 (2002).

Moreover, because the defendants have asserted various special defenses, we set forth the legal principles regarding defenses to foreclosure actions. "Historically, defenses to a foreclosure action have been limited to payment, discharge, release or satisfaction . . . or, if there had never been a valid lien. . . . The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . A valid special defense at law to a foreclosure proceeding must be legally sufficient and address the making, validity or enforcement of the mortgage, the note or both. . . . Where the plaintiff's conduct is inequitable, a court may withhold foreclosure on equitable considerations and principles. . . . [O]ur courts have permitted several equitable defenses to a foreclosure

action. [I]f the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had . . . . Other equitable defenses that our Supreme Court has recognized in foreclosure actions include unconscionability . . . abandonment of security . . . and usury." (Citation omitted; internal quotation marks omitted.) Id., 833–34. In light of the foregoing, we first determine whether the court properly concluded that no genuine issues of material fact existed and, if so, whether its conclusion, based on the undisputed facts, was legally and logically accurate.

### A

The defendants' first claim and special defense is that the plaintiff failed to provide them with sufficient notice as required by paragraph nineteen of the mortgage. Specifically, the defendants assert that (1) an additional notice of default was required before the plaintiff could commence its second foreclosure action, and (2) if an additional notice of default was not required, then the first notice of default was "deficient on its face and improper." Conversely, the plaintiff argues that a single notice of default before acceleration is the only notice requirement in the mortgage documents, and that such notice, which was given to the defendants prior to the first foreclosure action, was sufficient under the circumstances. We agree with the plaintiff.

### 1

It is not disputed that the plaintiff gave notice of default to the defendants prior to accelerating the mortgage debt and commencing its first foreclosure action. Following the court's dismissal of that action, the plaintiff commenced the present action absent any further notice of default to the defendants.

It is well established that "[n]otices of default and acceleration are controlled by the mortgage documents.

Construction of a mortgage deed is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly. The primary rule of construction is to ascertain the intention of the parties. This is done not only from the face of the instrument, but also from the situation of the parties and the nature and object of their transactions. . . . A promissory note and a mortgage deed are deemed parts of one transaction and must be construed together as such. . . . Where the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure." (Citations omitted; internal quotation marks omitted.) *New Haven Savings Bank* v. *LaPlace*, 66 Conn. App. 1, 12, 783 A.2d 1174, cert. denied, 258 Conn. 942, 786 A.2d 426 (2001).

"In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Moreover, the words [in the deed] are to be given their ordinary popular meaning, unless their context, or the circumstances, show that a special meaning was intended." (Internal quotation marks omitted.) *Bank of America, FSB* v. *Hanlon*, 65 Conn. App. 577, 582, 783 A.2d 88 (2001).

"A promissory note is nothing more than a written contract for the payment of money, and, as such, contract law applies. . . . In construing a contract, the controlling factor is normally the intent expressed in the contract, not the intent which the parties may have had or which the court believes they ought to have had. . . . Where . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity." (Inter-

nal quotation marks omitted.) *New Haven Savings Bank* v. *LaPlace*, supra, 66 Conn. App. 13.

In this case, paragraph 6 (C) of the note contains clear and unambiguous language, which leaves no room for ambiguity. It states in relevant part: "[T]he Note Holder may send [the borrower] a written notice telling [the borrower] that if [he and or she does] not pay the overdue amount by a certain date, the Note Holder may require [the borrower] to pay immediately the full amount of principal which has not been paid and all the interest that [the borrower] owe[s] on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to [the borrower]." In addition, paragraph nineteen of the mortgage, which also is clear and unambiguous, states in relevant part: "Lender shall give notice to Borrower prior to acceleration following Borrower's breach . . . ."

On the basis of the clear and unambiguous language of the note and mortgage, the plaintiff was required only to give notice of default to the defendant prior to accelerating the entire debt. The plaintiff provided such a notice before accelerating the debt and commencing its first foreclosure action; no further notice, such as a subsequent notice of default, notice of acceleration or foreclosure, was required prior to the plaintiff commencing its second foreclosure action. By instituting its first foreclosure action, the plaintiff validly exercised its right to accelerate the entire mortgage debt. See *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 196 Conn. 172, 180, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). The court's dismissal of the first foreclosure action did not wipe the slate clean, so to speak, for the defendants because they already had been notified of their default and the mortgage debt already had been accelerated. The debt, therefore, remained accelerated. "To rule otherwise

would nullify the effect of the acceleration clause." *City Savings Bank of Bridgeport* v. *Dessoff*, 3 Conn. App. 644, 650, 491 A.2d 424, cert. denied, 196 Conn. 811, 495 A.2d 279 (1985).

Because the mortgage documents required no additional notice of default prior to the plaintiff's commencement of its second foreclosure action, that component of the defendants' first special defense is legally insufficient, and the court's conclusion that it presented no genuine issue of material fact was legally and logically correct. We next address the sufficiency of the notice.

2

The defendants further argue that even if no additional notice of default was required, the plaintiff's March 21, 1997 notice, which preceded its acceleration of the mortgage debt and its first foreclosure action, was insufficient because it did not comply with the notice provision in the mortgage. Specifically, the defendants claim that the notice of default failed to inform them of (1) their right to reinstate the mortgage after the debt had been acceleration and (2) their right to contest foreclosure in court, thereby rendering summary judgment improper and the order of foreclosure void. We will address each claim in sequence.

Referring to the legal principles previously stated regarding notices of default, we note that paragraph nineteen of the mortgage states in relevant part: "Lender . . . shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure or sale."

a

The plaintiff acknowledges in its brief that its "notice of default did not expressly set forth" the information

regarding reinstatement of the mortgage after acceleration, but argues, nevertheless, that written notice in that regard was not required because the defendants had actual notice of that right. We agree with plaintiff and note, however, that our analysis pertains only to the plaintiff's failure to include in its notice of default the information regarding the defendants' right to reinstatement after acceleration and does not pertain to any other notice requirement as set forth in the mortgage documents.

Notice provisions in mortgage documents usually require default notices to contain specific information, which serves a very clear and specific purpose; it informs mortgagors of their rights so that they may act to protect them. Therefore, when "the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure." *New Haven Savings Bank* v. *LaPlace*, supra, 66 Conn. App. 12. Consequently, we must determine whether such a condition precedent has been satisfied. Because the notice of default did not comply with the notice provision regarding the defendants' right to reinstate the mortgage after acceleration, we look to the record to determine if, in fact, the defendants had actual notice of that right.

The record, indeed, demonstrates that the defendants were fully aware and had actual notice of their right to reinstate the mortgage subsequent to acceleration of the debt, which is demonstrated in the following colloquy at the July 7, 2000 pretrial hearing:

"The Court: And what do you feel is properly owed?

\* \* \*

"[Defendants' Counsel]: . . . [T]hat's why we would like to talk to a judge, to talk about the *reinstatement* . . . ."

*  *  *

"The Court: . . . Do you want to continue with this defendant as a mortgagor relative to being represented?

*  *  *

"[Plaintiff's Counsel]: Yes. As far as communication with our client, if the [defendants are] obviously willing and able to *reinstate* the note and mortgage—

"The Court: Well, have they indicated to you a position upon which they would *reinstate* the mortgage?

"[Plaintiff's Counsel]: Yes, Your Honor, they have.

*  *  *

"[Plaintiff's Counsel]: They provided us with the *reinstatement* figure.

*  *  *

"The Court: Have you disclosed them to [the defendants]?

"[Plaintiff's Counsel]: Yes.

"The Court: Is it something you can work on?

*  *  *

"[Defendants' Counsel]: . . . [W]e are down to one last payment, and we have got everything fairly much cleared up, and now we would like to go to the next stage and talk to someone about the *reinstatement* proposals." (Emphasis added.)

At the December 22, 2000 pretrial hearing, the court ordered the defendants to make payments on the mortgage debt. In so concluding, the court stated that such payments were "simply for the purpose of [the defendants'] showing their good faith and their willingness to at least make a payment on [their] obligation." The plaintiff's counsel responded that "[we] will accept

[payment] and hold it, to be applied against either the debt or *reinstatement*, but without waiving the acceleration or the notice of default of the foreclosure." (Emphasis added.) Finally, at the February 9, 2001 pretrial hearing, the plaintiff's counsel informed the court that he had "provided [the defendants' counsel] with figures with regard to what it will take to *reinstate* to pay off the indebtedness." (Emphasis added.)

It is patently obvious from the record that the defendants had actual notice of their right to reinstate the mortgage after the debt had been accelerated. At the July 7, 2000 pretrial hearing, the defendants' counsel specifically stated to the court that the defendants wanted to discuss reinstatement. The plaintiff also made it very clear that it was willing to reinstate the mortgage, provided the parties reach an agreement as to the amount of money that the defendants would have to pay for reinstatement. In fact, the parties negotiated several times in that regard, but failed to reach an agreement.

Mindful of our obligation to view the evidence in the light most favorable to the defendants, we nonetheless conclude that literal enforcement of the relevant notice provision would serve no purpose because the defendants had actual notice of their right to reinstate the mortgage after acceleration. Further, the plaintiff's deficient written notice caused no harm to the defendants. See *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 418, 538 A.2d 219 (1988) ("[l]iteral enforcement of notice provisions when there is no prejudice is no more appropriate than literal enforcement of liquidated damages clauses when there are no damages"). Moreover, the plaintiff's failure to provide sufficient written notice does not frustrate the purpose of the notice provision because the defendants had actual notice of their right to reinstate the mortgage and acted to protect that right, as demonstrated before the court. See *Lauer* v. *Zoning*

*Commission,* 220 Conn. 455, 462, 600 A.2d 310 (1991). Consequently, that component of the defendants' special defense is legally insufficient, and the court's conclusion that it presented no genuine issue of material fact and that it was inadequate as a matter of law was legally and logically correct.

b

The defendants also claim that the court improperly concluded that the notice of default substantially complied with the relevant notice requirement regarding their right to contest the foreclosure in court.

Paragraph nineteen of the mortgage specifically states that the plaintiff shall inform the defendants of the "right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale." As the court stated: "The notice of default sent by the plaintiff does not directly inform the defendants of their right to contest foreclosure in court." The defendants argue that the plaintiff's failure to inform them properly rendered the notice insufficient. On the other hand, citing *Saunders* v. *Stigers,* 62 Conn. App. 138, 143, 773 A.2d 971 (2001), the plaintiff argues that the notice of default substantially complied with the relevant notice requirement. We agree.

In *Saunders,* we were confronted with a similar issue. The defendant challenged the plaintiff's notice of default because it failed to strictly comply with the notice requirement in the mortgage. The court concluded that a notice of default is sufficient if "it is apparent from the language of the notice that the defendant was" adequately informed of his or her rights. Id., 147.

In this case, the notice of default stated: "If you notify our office in writing within the thirty (30) day period

described [in this notice] that the debt, or any portion thereof, is disputed, or if you request the name and address of the original creditor, our office shall cease collection of the debt, or any disputed portion thereof, until we obtain verification of the debt or the name and address of the original creditor. A copy of such verification or name and address of the original creditor will be mailed to you by our office immediately. If you do not indicate a dispute in writing within thirty (30) days of this letter, we will assume the claim to be valid, and refer for foreclosure." The notice further stated that "failure to dispute the validity of the debt under the Fair Debt Collection Practices Act [(act) 15 U.S.C. § 1692 et seq.] may not be construed by any Court as an *admission of liability* on [the borrower's] part." (Emphasis added.)

Although the notice of default did not specifically state that the defendants may "assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale," as stated in paragraph nineteen of the mortgage, the court concluded, and we agree, that the defendants were sufficiently apprised of their rights in that regard. The notice of default specifically informed the defendants of their right to contest the debt; it informed them, albeit indirectly, via the language regarding the act, that they had the right to assert defenses if they existed and that their failure to dispute the validity of the debt pursuant to the act did not constitute an admission of liability on their part. Therefore, the possibility of asserting defenses to liability was clear.

Though exact compliance with the notice requirement in the mortgage would have avoided any question as to the sufficiency of the notice of default, we conclude, on the basis of its language, that the notice of default substantially complied with the relevant notice provision. That component of the defendants' special

defense, therefore, is legally insufficient, and the court's conclusion that it presented no genuine issue of material fact was legally and logically correct.

## B

The defendants' next claim and second special defense is that the court improperly concluded that they had not substantially performed their obligations pursuant to the terms of the note and mortgage. Specifically, the defendants argue that by timely making their mortgage payments for nine years, they had substantially performed their obligations despite their failure to make timely payments of property taxes and to send receipts of property tax payments to the plaintiff. The defendants' claim has no merit.

The defendants have failed to show, in their brief or otherwise, that the doctrine of substantial performance applies in the context of a mortgagor's obligation to make payments to a mortgagee pursuant to a note and mortgage. The defendants argue that *Aetna Casualty & Surety Co.* v. *Murphy*, supra, 206 Conn. 409, and *Collins* v. *Sears Roebuck & Co.*, 164 Conn. 369, 382, 321 A.2d 444 (1973), allow for such an application. The defendants' argument is misguided.

In *Murphy*, our Supreme Court examined what role prejudice should play in the judicial enforcement of standard notice clauses in insurance policies that operate to entirely discharge an insurance carrier from any further liability on its insurance contract if the insured unreasonably delays its notification of claim to the insurer, thereby causing a " 'disproportionate forfeiture' "; *Aetna Casualty & Surety Co.* v. *Murphy*, supra, 206 Conn. 413; to one of the contracting parties. Our Supreme Court stated that "[i]n numerous cases, [it] has held that, especially in the absence of conduct that is 'wilful,' a contracting party may, despite his own departure from the specifications of his contract,

enforce the obligations of the other party with whom he has dealt in good faith." Id.

*Murphy* is distinguishable on its facts because the present case does not involve circumstances under which the traditional contract principles of strict compliance should yield. Here, the defendants failed to make tax payments as required by the terms of their note and mortgage, which resulted in foreclosure; they have suffered no prejudice and do not bear the burden of a disproportionate forfeiture by strictly enforcing the terms of their contract. Moreover, to allow mortgagors to make partial payments on their mortgages, and then avoid foreclosure by way of a claim of substantial performance, would result in the unsettling of the real estate market and an increase in litigation. *Collins* also is distinguishable on its facts. That case addresses an action arising from a lease agreement; it does not shed any light whatsoever on the issue before this court.

We conclude, absent any authority to the contrary, that the doctrine of substantial performance does not apply to the present situation. The court's conclusion that no genuine issue of material fact existed in regard to the defendants' special defense of substantial performance is legally and logically correct because it does not address the making, validity or enforcement of the note and mortgage.

## C

The defendants' next claim and third special defense is that the court improperly determined that the plaintiff did not violate the principles of good faith and fair dealing. That claim has no merit.

"We recently stated that special defenses and counterclaims alleging a breach of an implied covenant of good faith and fair dealing . . . are not equitable defenses to a mortgage foreclosure. . . . Even if a

breach of the implied covenant of good faith and fair dealing were an equitable defense to a mortgage foreclosure, the clear language of the mortgage and the note fails to support the defendant's claim that the plaintiff breached such an implied covenant"; (citations omitted; internal quotation marks omitted) *LaSalle National Bank* v. *Freshfield Meadows, LLC,* supra, 69 Conn. App. 835; because the plaintiff has acted in accordance with its rights as set forth in those documents.

Accordingly, the defendants' special defense is legally insufficient and is not a valid legal or equitable defense to a foreclosure action. Therefore, the court's conclusion that it presented no genuine issue of material fact was legally and logically correct.

### D

The defendants' next claim and fourth special defense is that the court improperly allowed foreclosure despite the fact that is was inequitable to do so. Specifically, the defendants argue that the plaintiff's conduct regarding its enforcement of the note and mortgage was inequitable and that the court should have ordered a full hearing in that regard. We disagree.

A foreclosure action constitutes an equitable proceeding. Therefore, "[t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) Id., 833.

The fourth special defense incorporates and relies on those allegations asserted in the second special defense. Because we have determined the defendants' second special defense to be legally insufficient, the fourth special defense also must fail. Further, the defendants have failed to show even a single instance in which the plaintiff's actions might be considered inequitable. Therefore, the court acted within its sound discretion

in not ordering a full hearing and allowing the foreclosure to proceed, and its conclusion that the fourth special defense presented no genuine issue of material fact was legally and logically correct.

E

The defendants' next claim and fifth special defense asserts that that the court improperly determined that the parties did not settle the dispute that led to this foreclosure action via an accord and satisfaction. Specifically, the defendants claim that the court failed to consider an affidavit and various letters that allegedly support their claim. We disagree.

"The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership*, 40 Conn. App. 434, 445, 671 A.2d 1303 (1996). Further, we have stated that "[t]he applicable rule regarding the material facts to be considered on a motion for summary judgment is that the facts at issue are those alleged in the pleadings." *New Haven Savings Bank* v. *LaPlace*, supra, 66 Conn. App. 15.

The defendants have failed to allege any facts; their fifth special defense consists merely of one conclusory statement that "[o]n or about [May 2, 1997], the plaintiff, by one Lisa Murry [a loan counselor for the plaintiff] and defendants entered into and accord, satisfaction and agreement, which resolves same." The defendants' mere assertion that an accord and satisfaction occurred is legally insufficient; they failed to plead any facts whatsoever in support thereof. See *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.*, 224 Conn. 210, 215, 618 A.2d 25 (1992) (motion to strike properly granted if pleading alleges mere conclusions of law unsupported by facts alleged); see also *Melfi* v. *Dan-*

*bury,* 70 Conn. App. 679, 685 n.2, 800 A.2d 582, cert. denied, 261 Conn. 922, 806 A.2d 1061 (2002), citing *Hendel's Investors Co.* v. *Zoning Board of Appeals,* 62 Conn. App. 263, 274, 771 A.2d 182 (2001) (conclusory statements purporting to allege aggrievement insufficient without adequate accompanying factual allegations).

The defendants further claim that John M. Krenisky's affidavit and the various letters that the defendants sent to the plaintiff raise a genuine issue of material fact. The affidavit states in relevant part: "The matter was initially resolved in [April, 1997] and then the bank repudiated same. I sent them, as agreed, all the back mortgage payments along with check [no.] 3378 . . . made out to the City of New Haven, which was never cashed. Defendant[s] believed this resolved the dispute. Plaintiff repudiated same, and returned these checks, for no apparent reason."

On the basis of our review of the affidavit and other documents submitted to the court, we conclude, contrary to the defendants' assertion, that none of the documents raises a genuine issue of material fact as to the existence of an accord between the parties. Because the defendants failed to plead sufficiently any facts as to the existence of an accord, and because the record does not support the same, the court's conclusion that the fifth special defense was legally insufficient was legally and logically correct.

II

The defendants next claim that the court improperly granted the plaintiff's motion to strike their six count counterclaim, in which they asserted one count alleging breach of contract, one count alleging breach of the covenant of good faith and fair dealing, three counts related to malicious prosecution and one count alleging abuse of process. We are not persuaded.

"A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citation omitted; internal quotation marks omitted.) *Donar* v. *King Associates, Inc.*, 67 Conn. App. 346, 349, 786 A.2d 1256 (2001).

Both the breach of contract claim and the breach of the covenant of good faith and fair dealing claim incorporate the allegations asserted in the defendants' second special defense. We have determined that defense to be legally insufficient because it lacks any factual allegations. Counts one and two of the defendants' counterclaim, therefore, are legally insufficient because they are mere conclusions of law unsupported by any factual allegations.

Counts three, four and five[2] are related and allege malicious prosecution. Count three states some facts regarding the plaintiff's first foreclosure action against the defendants and, in reference to that action, alleges in relevant part that (1) "[s]aid action was commenced by plaintiff without probable cause," (2) "[s]aid action was maliciously brought," and (3) "[o]n account thereof, the defendants were embarrassed and humiliated and otherwise suffered anxiety and distress of mind, their reputation impugned and they had to rearrange their schedule to defend themselves and to

---

[2] Count three alleges malicious prosecution, and counts four and five seek damages on the basis of such prosecution.

attend Court for same and they incurred fees and expenses in the defense thereof and lost tax benefits thereon."

Count three is legally insufficient because it alleges no facts in support of its mere conclusions of law. Counts four and five seek damages on the basis of count three, which is devoid of any factual allegations. Counts four and five, therefore, necessarily must fail. Finally, count six alleges abuse of process. Count six incorporates the allegations of count four, which we have determined to be legally insufficient because it lacks supportive factual allegations. Consequently, count six fails.

We conclude, on the basis of our plenary review, that the court properly granted the plaintiff's motion to strike all six counts of the defendants' counterclaim. The stricken counts are legally insufficient because they consist of nothing more than mere conclusions of law unsupported by factual allegations.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.