******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

JOHN B. ONTHANK *v.* PIERCE
ONTHANK ET AL.
(AC 43949)

Moll, Clark and Eveleigh, Js.

*Syllabus*

The plaintiff sought to recover damages for, inter alia, breach of contract,
alleging that the defendants had failed to make all payments required
under a promissory note. The trial court rendered judgment for the
plaintiff on his breach of contract claim and rejected the defendants'
special defenses, including their defense that the plaintiff failed to allege
or establish that he had fulfilled every condition precedent prior to
bringing an action on the promissory note. On the defendants' appeal
to this court, *held*:

1. This court affirmed the judgment of the trial court as to the breach of
contract claim on the ground that the plaintiff substantially complied
with the notice of default provision in the promissory note under the
circumstances of this case; although the plaintiff did not send the letter
declaring default by certified mail, as required by the notice provision
in the promissory note, there was no contractual requirement of proof
of actual delivery, the defendants did not contest that they had actual
notice of the declaration of default, and any noncompliance by the
plaintiff with the requisite method of delivery as provided in the promis-
sory note did not result in any prejudice to the defendants.

2. The trial court's award of damages was not clearly erroneous, as there
was ample evidence in the record to support its finding that the defen-
dants were not entitled to a $120,000 credit for the purported value of
certain stock provided to the plaintiff as security; the share value for
the stock claimed by the defendants was based on market transactions
in December, 2015, but the plaintiff did not have an obligation under
the note to sell the shares until after he declared a default in September,
2016, the defendants provided no evidence as to the value of the shares
at the time of the declaration of default, the evidence actually revealed
substantial fluctuations in the stock price over the years, and there was
evidence that the shares were not accessible in the plaintiff's account
and, therefore, not transferable, until January, 2017, contradicting the
defendants' claim that the plaintiff could freely sell the shares in Decem-
ber, 2015.

Argued May 24—officially released July 20, 2021

*Procedural History*

Action to recover damages for, inter alia, breach of
contract, and for other relief, brought to the Superior
Court in the judicial district of Stamford-Norwalk and
tried to the court, *Hon. Kenneth B. Povodator*, judge
trial referee; judgment for the plaintiff, from which the
defendants appealed to this court. *Affirmed.*

*Pierce Onthank* and *Susan Onthank*, self-repre-
sented, the appellants, with whom, on the brief, was
*John B. Kaiser* (defendants).

*John B. Onthank*, self-represented, the appellee
(plaintiff).

*Opinion*

MOLL, J. The self-represented defendants, Pierce Onthank and Susan Onthank,[1] appeal from the judgment of the trial court, rendered following a bench trial, in favor of the self-represented plaintiff, John B. Onthank, on count one of his second revised complaint asserting a breach of contract claim.[2] On appeal, the defendants claim that the court erred in (1) rejecting their special defense asserting that the contract at issue—a promissory note—was unenforceable because the plaintiff did not provide them with a notice of default in strict compliance with the terms of the note and, thus, failed to satisfy a condition precedent to the enforcement thereof, and (2) awarding the plaintiff damages on the breach of contract claim because the court improperly declined to credit them $120,000 to account for the purported value of one million shares of stock transferred to the plaintiff. We disagree and, accordingly, affirm the judgment of the trial court.

The trial court found the following facts. In June, 2009, the defendants executed several documents, including a loan agreement and a promissory note, relating to a $300,000 loan from the plaintiff to the defendants. The one year fixed term loan was made to assist the defendants in purchasing a home in Wilton. The loan agreement required, inter alia, the execution of a mortgage on the Wilton property in favor of the plaintiff. Although the defendants made payments to the plaintiff between 2009 and 2016, the defendants still owed the plaintiff a substantial amount on the loan in September, 2016, around which time it was discovered that a valid mortgage in favor of the plaintiff had not been recorded on the Wilton land records.

On November 18, 2017, the plaintiff commenced this action. On September 20, 2018, the plaintiff filed a second revised complaint (i.e., the operative complaint). The plaintiff's four count second revised complaint asserted the following claims against the defendants: (1) breach of contract (count one); (2) unjust enrichment (count two); (3) statutory theft (count three); and (4) fraud (count four). In support of his claims, the plaintiff alleged, inter alia, that the defendants had failed to repay him the $300,000, plus interest, that he had loaned to them. On March 21, 2019, the defendants filed an answer and special defenses. Relevant to this appeal, the sixth special defense directed to the breach of contract claim asserted in general terms that the plaintiff neither alleged nor established that he had fulfilled every condition precedent to suing on the promissory note. In their answer, the defendants admitted to having borrowed the money from the plaintiff, but generally denied the substantive allegations of wrongdoing.[3] On April 3, 2019, the plaintiff filed a reply to the defendants' special defenses.

The matter was tried to the trial court, *Hon. Kenneth B. Povodator*, judge trial referee, on August 1 and 2, 2019. During trial, the plaintiff withdrew count four of his second revised complaint sounding in fraud. Thereafter, the parties submitted posttrial briefs.

On January 30, 2020, the court issued its forty-six page memorandum of decision. With respect to the plaintiff's breach of contract claim, the court concluded that the promissory note was "prima facie enforceable" and that the defendants breached the note by nonpayment of the full principal amount as of the one year anniversary of the loan (i.e., the maturity date). The court proceeded to reject all of the defendants' special defenses to the breach of contract claim,[4] including the sixth special defense, which the court construed as alleging that the plaintiff failed to comply with a condition precedent to the enforcement of the note by not providing the defendants with a notice of default in strict compliance with the terms of the note. The court found in favor of the plaintiff on count one and awarded the plaintiff $388,530.76 in compensatory damages, with per diem interest of $61.64.

With respect to the plaintiff's unjust enrichment claim, because the plaintiff prevailed on the breach of contract claim, the court rendered judgment for the defendants on the unjust enrichment claim on the ground that it was a legally inconsistent, alternative theory of liability. The court further concluded that, in the event that its judgment in the plaintiff's favor on the breach of contract claim was later reversed, judgment should enter in favor of the plaintiff on count two.[5]

With respect to the plaintiff's claim of statutory theft, the court rendered judgment in the defendants' favor. This appeal followed.[6] Additional facts and procedural history will be set forth as necessary.

I

The defendants first claim that the trial court erred in concluding that they breached their contract with the plaintiff. Specifically, the defendants contend that the court improperly rejected their sixth special defense asserting that the plaintiff did not strictly comply with the notice of default provision of the promissory note, thereby failing to satisfy a condition precedent to its enforcement. They contend that the court improperly construed the notice provision and found it satisfied under the circumstances of this case. The plaintiff claims, inter alia, that the trial court properly concluded that he substantially complied with the notice provision. We agree with the plaintiff.

We begin our analysis by setting forth the relevant standard of review and applicable legal principles. "A promissory note is nothing more than a written contract for the payment of money, and, as such, contract law applies." (Internal quotation marks omitted.) *Fidelity*

*Bank* v. *Krenisky*, 72 Conn. App. 700, 707, 807 A.2d
968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002).
"In construing a contract, the controlling factor is nor-
mally the intent expressed in the contract, not the intent
which the parties may have had or which the court
believes they ought to have had. . . . Where . . .
there is clear and definitive contract language, the scope
and meaning of that language is not a question of fact
but a question of law. . . . In such a situation our scope
of review is plenary . . . ." (Internal quotation marks
omitted.) *Aurora Loan Services, LLC* v. *Condron*, 181
Conn. App. 248, 265, 186 A.3d 708 (2018). "Under the
plenary standard of review, we must decide whether
the court's conclusions are legally and logically correct
and supported by the facts in the record." (Internal
quotation marks omitted.) *Estela* v. *Bristol Hospital,
Inc.*, 179 Conn. App. 196, 207–208, 180 A.3d 595 (2018).

The following additional facts, as found by the trial
court, and procedural history are relevant to our consid-
eration of the defendants' claim. The loan agreement
required the defendants to execute a mortgage in favor
of the plaintiff on the Wilton property. The defendants
attempted to comply with this requirement by filing a
copy of the loan agreement and the note on the land
records, but the filing lacked even a property descrip-
tion and did not constitute a mortgage in favor of the
plaintiff. Furthermore, a number of liens subsequently
were placed on the Wilton property, including by the
Internal Revenue Service (IRS) with respect to tax liabil-
ities. Accordingly, any subsequently filed encumbrance
would be behind the IRS lien and the first mortgage,
leaving the plaintiff with little or no protection.

Although the defendants made payments to the plain-
tiff totaling $148,678 between 2009 and 2016, the defen-
dants still owed the plaintiff a substantial amount on
the loan in September, 2016, at which time the plaintiff
declared a default. By way of background, the parties'
promissory note provided that certain enumerated
events of default "shall not occur until [the defendants]
are first sent a notice of the default or deficiency *by
certified mail, postage prepaid or personal delivery,*
whereupon [the defendants] shall have the opportunity
to cure the default or deficiency within five (5) days of
the date of the notice. For purposes hereof, the date
of the notice shall be deemed to be the earlier of the
date of the receipt of the notice of default by [the defen-
dants] and the date which is the third business day after
the date the notice is deposited, postage prepaid, in
the United States Mail addressed to [the defendants],
whether or not said notice is received." (Emphasis
added.)

On September 9, 2016, Susan sent an e-mail to the
plaintiff explaining that she had seen a spreadsheet
that he had sent calculating the amount owed on the
promissory note and that she and Pierce "clearly ha[d]

no other choice but to give [the plaintiff] the [Wilton] house." In that e-mail, Susan also asked the plaintiff to "move forward and send the certified letter."

In a letter dated September 12, 2016, the plaintiff explicitly declared a default (default notice). The plaintiff wrote in relevant part that "[a]s I have exhausted my efforts to contact either of you by phone or resolve this via [e-mail], I am exercising my rights under our agreement and am declaring this loan in 'Default' under the [terms of the promissory note] . . . ." In the default notice, the plaintiff further explained that he was sending it because the promissory note was "in breach and not being met or upheld in the spirit of" the parties' agreement. The court found that the defendants actually had received the default notice.

In support of their sixth special defense, the defendants maintained that the plaintiff failed to comply with the provision that a notice of default be sent "by certified mail, postage prepaid or personal delivery," focusing specifically on the lack of evidence as to any certified mailing. As an initial matter, in rejecting the defendants' sixth special defense, the court construed the notice provision and concluded that the phrase "personal delivery" was satisfied by actual delivery, even by noncertified mail.[7] In this regard, the court found that the plaintiff had strictly complied with the notice provision. In the alternative, the court deemed "delivery and actual receipt" to constitute substantial compliance with the notice provision. Because the court determined that the plaintiff had complied, either strictly or substantially, with the notice requirement of the note, it concluded that there was no material failure to comply with a condition precedent.

The defendants claim that the court erred in analyzing "what 'personal delivery' [as that phrase is used in the notice provision] could or might mean" because "[t]he plain meaning [of the notice provision] is the plain meaning." In essence, the defendants contend that the court improperly construed the notice provision to permit actual delivery, even by means of noncertified mail.[8] Because we affirm the court's conclusion that the plaintiff substantially complied with the notice provision, we need not address the defendants' claim that the court improperly construed the "personal delivery" language in the notice provision to mean "actual" delivery under a strict compliance standard.

"On several occasions, this court has considered the role of substantial performance in the enforcement of contract obligations. The concept is not a novel one. Although the doctrine was most eloquently articulated in the celebrated case of *Jacob & Youngs, Inc.* v. *Kent*, 230 N.Y. 239, 129 N.E. 889 (1921), in the context of building contracts, it has long been recognized to have application as well to the enforcement of 'contracts of all kinds . . . .' 8 A. Corbin, Contracts (Rev. Ed. 1999)

§ 36.2, p. 336. At issue in a claim of substantial performance is whether partial performance by one party is so 'nearly equivalent to that for which the parties bargained' that it will 'protect him from having his defaults considered as breaches' sufficient 'to justify the other party in refusing' to comply with its own contractual obligations. 15 S. Williston, Contracts (4th Ed. Lord 2000) § 44:54, pp. 227–28.

" 'There is no simple test for determining whether substantial performance has been rendered'; *Hadden* v. *Consolidated Edison Co.*, 34 N.Y.2d 88, 96, 312 N.E.2d 445, 356 N.Y.S.2d 249 (1974); but among the factors to be considered is 'the degree to which the purpose behind the contract has been frustrated . . . .' Id." *Mortgage Electronic Registration Systems, Inc.* v. *Goduto*, 110 Conn. App. 367, 373, 955 A.2d 544, cert. denied, 289 Conn. 956, 961 A.2d 420 (2008). "The doctrine of substantial compliance is closely intertwined with the doctrine of substantial performance. . . . The doctrine of substantial performance shields contracting parties from the harsh effects of being held to the letter of their agreements. Pursuant to the doctrine of substantial performance, a technical breach of the terms of a contract is excused, not because compliance with the terms is objectively impossible, but because actual performance is so similar to the required performance that any breach that may have been committed is immaterial." (Citation omitted; internal quotation marks omitted.) *Pack 2000, Inc.* v. *Cushman*, 311 Conn. 662, 675, 89 A.3d 869 (2014). "[T]he proper application of the doctrine of substantial performance requires a determination as to whether the contractual breach is material in nature. . . . [T]he doctrine of substantial performance applies only where performance of a *nonessential* condition is lacking, so that the benefits received by a party are far greater than the injury done to him by the breach of the other party." (Citations omitted; emphasis in original; internal quotation marks omitted.) *21st Century North America Ins. Co.* v. *Perez*, 177 Conn. App. 802, 815, 173 A.3d 64 (2017), cert. denied, 327 Conn. 995, 175 A.3d 1246 (2018).

This court repeatedly has applied the substantial performance doctrine in determining whether a contractual notice requirement has been satisfied in a given case, generally with respect to the *contents* of the notice itself. See, e.g., *Mortgage Electronic Registration Systems, Inc.* v. *Goduto*, supra, 110 Conn. App. 373–76; id., 375 ("[a]lthough generally contracts should be enforced as written, we will not require mechanistic compliance with the letter of notice provisions if the particular circumstances of a case show that the actual notice received resulted in no prejudice and fairly apprised the noticed party of its contractual rights" (internal quotation marks omitted)); *Fidelity Bank* v. *Krenisky*, supra, 72 Conn. App. 713–15 (concluding that notice of default substantially complied with notice provision in

mortgage because defendants were sufficiently apprised of their rights); see also *Wells Fargo Bank, N.A.* v. *Fitzpatrick*, 190 Conn. App. 231, 241–43, 210 A.3d 88 (applying substantial compliance doctrine to mortgage deed's notice requirements), cert. denied, 332 Conn. 912, 209 A.3d 1232 (2019); *Twenty-Four Merrill Street Condominium Assn., Inc.* v. *Murray*, 96 Conn. App. 616, 620–25, 902 A.2d 24 (2006) (declining to require strict compliance with notice requirement in bylaws where delay in notice resulted in no prejudice to defendant under circumstances of case). The present case gives us the occasion to consider, and affirm, the court's application of the substantial compliance doctrine to the *method of mailing* identified in the contractual notice provision.

Applying the foregoing principles to the present case, we conclude that, even assuming arguendo that the method of delivery of the default letter did not mechanistically comply with the contractual notice provision, "literal enforcement . . . would serve no purpose"; *Fidelity Bank* v. *Krenisky*, supra, 72 Conn. App. 712; because, as found by the trial court, the defendants had actual notice of the declaration of their default— a finding that they do not challenge on appeal. We therefore affirm the trial court's judgment as to count one on the ground that the plaintiff substantially complied with the notice requirement of the promissory note under the circumstances of this case, namely, where there is no contractual requirement of proof of actual delivery, actual delivery is not contested, and any noncompliance with the requisite method of delivery did not result in any prejudice to the defendants. Cf. *Aurora Loan Services, LLC* v. *Condron*, supra, 181 Conn. App. 276 ("we decline to apply the doctrine [of substantial performance] where there is a contractual provision requiring proof of actual delivery for a notice of default sent by certified mail, return receipt requested, and there is no evidence that the defendants actually received the notice of default").

II

The defendants next claim that the trial court erred in its calculation of damages awarded to the plaintiff. Specifically, the defendants assert that the damages award should have been reduced by a credit of $120,000, representing the purported value of one million shares of stock provided to the plaintiff as security. We are not persuaded.

"Our Supreme Court has held that [t]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable

construction in support of the verdict to which it is entitled. . . . In other words, we are constrained to accord substantial deference to the fact finder on the issue of damages. . . . Under the clearly erroneous standard, we will overturn a factual finding only if there is no evidence in the record to support it . . . or [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Northeast Builders Supply & Home Centers, LLC* v. *RMM Consulting, LLC*, 202 Conn. App. 315, 353, 245 A.3d 804, cert. denied, 336 Conn. 933, 248 A.3d 709 (2021).

The following additional facts, as found by the trial court, are relevant to our consideration of the defendants' claim. The loan agreement between the plaintiff and the defendants required the defendants to provide, inter alia, 1.1 million shares of American Energy Group Ltd. (AEG)[9] stock to the plaintiff as collateral. The defendants argued that because (1) they transferred one million shares of AEG stock to the plaintiff on December 11, 2015, and (2) on that date, the shares were valued at $0.12 per share, they were entitled to a credit in the amount of $120,000 (i.e., one million multiplied by 0.12) in connection with any damages awarded to the plaintiff.

In its memorandum of decision, the court found that the $0.12 share value claimed by the defendants was based on market transactions on December 11, 2015, and that the evidence revealed substantial fluctuations in the stock price over the course of years. Perhaps most importantly, the court found that there was no indication of value in 2016, when the plaintiff formally declared a default and had a duty under the loan agreement to look to the securities for an initial source of repayment of the debt. The court further found that the plaintiff had encountered problems liquidating the shares and that, at the time that he had declared the promissory note in default in 2016, he "was encountering issues relating to transferring the shares to his own personal account . . . ." Furthermore, although the defendants argued that they should be credited with the value of the one million shares as of December 11, 2015, the court found that the shares were not actually accessible in the plaintiff's personal account until January, 2017.

With respect to the plaintiff's difficulties in liquidating the AEG shares, the court found that there were "repeated references to and evidence of the substantial fluctuations in [the value of AEG stock] particularly over the course of years, and the plaintiff identified the general illiquidity" of the AEG shares—which the court classified as "penny stock[s]." Additionally, the court found that: (1) there was no "credible evidence as to

the value on a per share basis as of the [plaintiff's] declaration of default"; and (2) there was no "documentation as to time, price, or number of [AEG] shares]" sold beyond the actual sale of a small number of shares sold for $13,249. Finally, the court found that "there were continuing problems into at least 2018 concerning the ability of the plaintiff to sell the [AEG] shares."

On the basis of the evidence before it, the court determined that there were "uncertainties as to [the] marketability and value" of the one million shares of AEG stock. Accordingly, the court declined to credit the defendants with the $120,000 they were claiming; instead, the court credited the defendants for sales of the shares actually "made/documented," and treated unsold shares separately. To that end, the court found that the plaintiff had sold a number of AEG shares for a total of $13,249, and credited the defendants accordingly. Moreover, the court concluded that, to the extent that the plaintiff had sold any of the one million AEG shares in addition to those sold to generate the $13,249 credited as payment, "the additional amount recovered [was] to be treated as a payment against the indebtedness." The court further ordered the plaintiff to transfer any unsold AEG shares in his possession back to Pierce.

The defendants claim that the court erred in failing to deduct the $120,000 from the plaintiff's damages award. The defendants contend that (1) there is no dispute that they transferred one million shares of AEG stock, valued at $0.12 per share, to the plaintiff on December 11, 2015, and (2) the evidence in the record reveals, contrary to the court's finding, that the plaintiff was able to sell those shares freely as of that date. We are not persuaded.

As our Supreme Court has explained: "[T]he court must have evidence by which it can calculate the damages, which is not merely subjective or speculative . . . but which allows for some objective ascertainment of that amount. . . . This certainly does not mean that mathematical exactitude is a precondition to an award of damages, but we do require that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation [that] will enable the trier to make a fair and reasonable estimate." (Internal quotation marks omitted.) *American Diamond Exchange, Inc.* v. *Alpert*, 302 Conn. 494, 510–11, 28 A.3d 976 (2011).

Applying the clearly erroneous standard of review, which requires that we substantially defer "to the fact finder on the issue of damages"; (internal quotation marks omitted) *Northeast Builders Supply & Home Centers, LLC* v. *RMM Consulting, LLC*, supra, 202 Conn. App. 353; we conclude that the record supports the court's determination that the defendants were not entitled to the claimed $120,000 credit.

First, the court correctly found that the plaintiff did

not have an obligation to sell the shares on December 11, 2015. The loan agreement provided that in "the event of a default . . . Lender agrees to first resort to the Collateral Shares for repayment of the debt evidenced by the Note, attorneys' fees and costs through a resale of a sufficient number of the Collateral Shares in the open market reasonably necessary to recoup all sums due to Lender under the Note and Pledge Agreement." The court found that the plaintiff first declared a default in his letter dated September 12, 2016. Thus, because the plaintiff had not declared a default until September, 2016, he did not have an obligation to sell the AEG shares on December 11, 2015.

Second, the defendants did not submit evidence to support their claim that the AEG shares were worth $120,000. Rather, the defendants' own trial exhibits showed that there were substantial fluctuations in the value of the AEG stock. Simply put, the defendants did not provide the trial court with sufficient evidence to allow the court to " 'objective[ly] [ascertain]' " the value of the AEG stock. *American Diamond Exchange, Inc.* v. *Alpert*, supra, 302 Conn. 510–11.

Finally, there is evidence in the record that contradicts the defendants' claim that the plaintiff was able to sell the AEG shares freely as of December 11, 2015. In the plaintiff's September 12, 2016 letter to the defendants, the plaintiff explained that he was "still waiting to receive the 1.1 [million] shares of American Energy stock into [his] account." On January 26, 2017, the plaintiff received an e-mail notifying him that one million AEG shares had been transferred to his personal account. Thus, the trial court's finding that the shares were not actually accessible in the plaintiff's personal account—and therefore not transferable—until January, 2017, was amply supported by the evidence.

In sum, because the record readily supports the court's finding that the defendants were not entitled to a $120,000 credit for the purported value of the AEG stock, the defendants' claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The appeal form filed in this matter lists only Pierce Onthank as an appellant; however, the appellants' brief and docketing statement were filed on behalf of both Pierce Onthank and Susan Onthank as appellants. In light thereof, and given that their claims raised on appeal are identical, we consider them both as the appellants, and we refer to them in this opinion collectively as the defendants and individually by first name. See, e.g., *Celentano* v. *Rocque*, 282 Conn. 645, 647 n.1, 923 A.2d 709 (2007).

[2] The defendants also claim on appeal that the trial court erred in the contingent manner in which it rendered judgment on count two of the plaintiff's second revised complaint asserting an unjust enrichment claim. That is, because the plaintiff had prevailed on his breach of contract claim, and because the plaintiff's breach of contract and unjust enrichment claims were mutually exclusive (i.e., legally inconsistent) theories of liability, the court, relying on *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 724, 183 A.3d 1164 (2018), rendered judgment for the defendants on the unjust enrichment claim "subject to being reinstated as the operative judgment for the plaintiff should there be a determination that judgment improperly [was

rendered] in favor of the plaintiff on the breach of contract count." In light of our conclusion that the court properly rendered judgment for the plaintiff on the breach of contract claim, we need not address the defendants' challenge to the court's disposition of the unjust enrichment claim.

[3] In addition to their answer and special defenses, the defendants filed a three count counterclaim asserting claims for negligent infliction of emotional distress, intentional infliction of emotional distress, and loss of consortium. During trial, the defendants abandoned their counterclaim in its entirety.

[4] During trial, the defendants withdrew their first special defense asserting usury directed to count one. In addition, during trial, the defendants moved to amend their special defenses to add a defense based on the statute of limitations. The court reserved its decision on that motion. In its memorandum of decision, the court rejected the statute of limitations defense as untimely and further observed that, if considered on the merits, the defense would have failed.

[5] See footnote 2 of this opinion.

[6] The plaintiff has not filed a cross appeal.

[7] The court noted that the plaintiff had been living in Paris, France, and did not have access to the United States postal system and its certified mail form of delivery.

[8] The defendants do not challenge the court's factual finding that they actually received the default notice. Rather, they limit their claim to the contention that the plaintiff did not strictly comply with the notice provision of the promissory note.

[9] AEG is a business controlled by Pierce.

---