EDWARD SOCHA, JR. *v.* SCOTT BORDEAU
(SC 17371)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued April 11, 2005—officially released April 4, 2006

*Jeffrey F. Buebendorf*, with whom, on the brief, was *Elizabeth Conway*, for the appellant (defendant).

*Philip M. Block*, for the appellee (plaintiff).

*Opinion*

PALMER, J. The defendant, Scott Bordeau, appeals[1] from the judgment of the trial court rendered in favor of the plaintiff, Edward Socha, Jr. The plaintiff commenced this action, alleging that he owns certain subaqueous land in the town of Salem and that the defendant's use of that land to install and maintain a dock constitutes a trespass. On appeal, the defendant claims that the trial court, in granting the plaintiff's motion for summary judgment, improperly concluded that there was no genuine issue of material fact regarding the plaintiff's contention that he owns the subaqueous land in question. We agree with the defendant and, accordingly, reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiff and the defendant own abutting parcels of property along the shores of Gardner Lake in the town of Salem.[2] The parties share a common boundary along the west side of the plaintiff's property and the east side of the defendant's property. The southern boundaries of both parcels of property abut Gardner Lake.

In 1999, the plaintiff brought an action against the defendant, claiming ownership of a certain portion of

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The plaintiff's property is located partly in the town of Salem and partly in the town of Bozrah. The defendant's property is located entirely within the town of Salem.

property located along the parties' shared property line. In particular, the plaintiff claimed that the parties' shared boundary line deflected in a westerly direction such that the plaintiff's parcel included a wedge-shaped piece of lakefront property that the defendant had occupied up until that time. For purposes of resolving the boundary dispute, the parties entered into a written agreement to submit two issues to binding arbitration, namely: (1) "the actual location of the boundary between the plaintiff's and defendant's propert[ies] at their respective [east/west] boundary in the vicinity of the swamp adjacent to Gardner Lake"; and (2) "the total extent of frontage on Gardner Lake owned by the defendant." The parties further stipulated that "the claims of both parties shall be resolved completely and definitively" by the arbitration. Following the submission of the issues for arbitration, the arbitrator determined that the defendant owned the wedge-shaped parcel of property at issue and that the defendant's southern property line ran along the edge of the shoreline. The parties incorporated the arbitrator's finding into a boundary line agreement, which both parties signed and, in November, 2000, submitted to the trial court in the form of a stipulated judgment.[3] As part of the agreement, the plaintiff quitclaimed to the defendant all right, title and interest to the premises westerly and southwesterly of the agreed upon boundary line, and the defendant quitclaimed to the plaintiff all right, title and interest to the premises easterly and northeasterly of the agreed upon boundary line.

In May, 2001, the plaintiff brought the present action, alleging that he owns certain subaqueous land abutting the wedge-shaped parcel of property located at the defendant's southern property line. The plaintiff further alleged that the defendant had installed and maintained

---

[3] The stipulated judgment also was recorded on the land records of the town of Salem.

a dock on that subaqueous land, and that the defendant's installation and use of the dock[4] constitutes a trespass. The plaintiff sought, inter alia, a permanent injunction prohibiting the defendant's use of that subaqueous land.[5]

The defendant did not contest the plaintiff's allegation regarding his installation and maintenance of the dock, nor did the defendant claim that *he* owns the portion of the lake bottom on which the dock rests. He maintained, rather, that the plaintiff never had established that *the plaintiff* owns that subaqueous land, and that, in the absence of such proof, the defendant's use of that land cannot constitute a trespass against the plaintiff.

The plaintiff filed a motion for summary judgment, alleging that there was no genuine issue of material fact with respect to his claim because the arbitration decision and the parties' boundary line agreement definitively established that the plaintiff owned the subaqueous land in question. In support of his motion, the plaintiff submitted, inter alia, the agreement of the parties to submit their boundary line dispute to binding arbitration, the arbitrator's report and the boundary line agreement. The plaintiff also submitted the deed to his property, which describes that property as "continuing [s]outhwesterly *into* [*Gardner*] *Lake* and following the line of [the] old ditch *which is now under water* about

---

[4] The dock runs from the shore of the defendant's wedge-shaped parcel of property into Gardner Lake and rests, at various, unspecified points, on the lake bottom.

[5] The defendant subsequently filed a motion to strike the complaint for failure to join a necessary or indispensable party, namely, the state of Connecticut, which, the defendant had maintained, was the true owner of the subaqueous land at issue. The plaintiff then filed a motion seeking to add the state as a defendant, and the court granted the plaintiff's motion. The state, however, denied any ownership interest in the land, and the trial court, with the agreement of the parties, granted the state's motion to dismiss the claims against it.

350 feet to the point where the old ditch met the shore of the 'Great Pond' as it was in 1805 . . . ."[6] (Emphasis added.) The defendant claimed, inter alia, that the materials submitted by the plaintiff failed to demonstrate that the plaintiff owns the subaqueous land at issue. In support of his contention, the defendant filed with the court a map of Gardner Lake entitled, "Plan Made for State of Connecticut Department of Agriculture and Natural Resources Showing Gardner Lake in the Towns of Bozrah, Montville [and] Salem," that contained the following notation: "Lake Bottom *Owned by Socha in Bozrah* Is 36.7± Acr[es] *Other Lake Bottom Is* As [Follows] Bozrah 53.4± Acres [and] Montville 148.9± Acr[es] [and] Salem 287.1± Acres . . . ." (Emphasis added.)

The trial court granted the plaintiff's motion for summary judgment. In its memorandum of decision, the court concluded that the plaintiff owns the subaqueous land abutting the wedge-shaped portion of the defendant's property and that the defendant's use of that land for the purpose of installing and maintaining a dock constituted a trespass. In support of its conclusion, the trial court relied on (1) the language of the plaintiff's deed, which describes the plaintiff's property as continuing into the lake and following the land into an area that now is underwater, and (2) the prior arbitration between the parties. With respect to the latter, the trial court stated that, although "the arbitrator was not asked to determine the extent of the lake bottom owned by each of the parties," the plaintiff's "ownership of the lake bottom was never in dispute and the defendant has made no claim of ownership of the lake bottom." The trial court thereafter issued a permanent injunction, ordering the defendant "to remove all existing structures which are sited, anchored [or] otherwise attached

---

[6] The plaintiff submitted certain additional materials in support of his motion for summary judgment. We discuss those materials subsequently in this opinion.

to the lands of the plaintiff . . . on or before [May 1, 2004], and to thereafter refrain from trespassing on said lands by any structure, vessel or thing." In addition, the court awarded the plaintiff $44,151 in damages, costs and attorney's fees.

On appeal, the defendant claims that the trial court improperly granted the plaintiff's motion for summary judgment because the documentary evidence that the plaintiff had submitted in support of his motion failed to establish that he owns the subaqueous land at issue. The defendant further claims that the trial court improperly awarded damages, costs and attorney's fees to the plaintiff because, inter alia, the court failed to afford the defendant the opportunity to challenge the factual basis of the award. We agree with the defendant that the trial court improperly granted the plaintiff's motion for summary judgment on the merits. Consequently, we do not reach the defendant's claim regarding the propriety of the court's award of damages, costs and attorney's fees to the plaintiff.

We begin our analysis by setting forth the legal principles that govern our review. Practice Book § 17-49 provides in relevant part that judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is well established that, "[i]n seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle[s] him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and

that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]." (Internal quotation marks omitted.) *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 46–47, 881 A.2d 194 (2005). Furthermore, "[o]ur review of the trial court's decision to grant [a] . . . motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in [its] memorandum of decision . . . ." (Citation omitted; internal quotation marks omitted.) *Greenwich Hospital* v. *Gavin*, 265 Conn. 511, 519, 829 A.2d 810 (2003).

Our review of the trial court's decision to grant the plaintiff's motion for summary judgment also is guided by the well established rule that, when "both damages for trespass and an injunction are sought and the answer is a general denial, both title to the disputed area and possession are placed in issue." *Wadsworth Realty Co.* v. *Sundberg*, 165 Conn. 457, 461, 338 A.2d 470 (1973). Because "[t]itle is an essential element in a plaintiff's case, whe[n] an injunction is sought to restrain a tres-

pass"; (internal quotation marks omitted) *Velsmid* v. *Nelson*, 175 Conn. 221, 224, 397 A.2d 113 (1978); a party claiming title must rely on the strength of his own title and not on the weakness of the title of another. Id., 229. Moreover, because "trespass is a possessory action, it is incumbent on the plaintiff to prove possession, actual or constructive, in order to prevail." *Wadsworth Realty Co.* v. *Sundberg*, supra, 461. Consequently, "if [the plaintiff] seeks to enforce his rights by a mandatory injunction, he must show actual possession in himself, since injunctive relief cannot be used to take property out of the possession of one person in order to put it into the possession of another." *More* v. *Urbano*, 151 Conn. 381, 383–84, 198 A.2d 211 (1964). Finally, when "the issue of title or ownership is directly involved, the proper way to prove title is by the production of the original documents or certified copies from the record." (Internal quotation marks omitted.) *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 703, 780 A.2d 1 (2001). With these principles in mind, we turn to the defendant's claim that the trial court improperly determined that there was no issue of material fact regarding the plaintiff's ownership of the subaqueous land at issue.

In concluding that the plaintiff owned the land beneath the defendant's dock, the trial court relied on the plaintiff's deed and the arbitration decision. We agree with the defendant that neither of those two documents supports the trial court's determination that there was no genuine issue of material fact with respect to the plaintiff's ownership of the subaqueous land on which the dock rests.

We first address the trial court's reliance on that portion of the plaintiff's deed that describes the plaintiff's property as "continuing [s]outhwesterly into [Gardner] Lake and following the line of [the] old ditch which is now under water about 350 feet to the point

where the old ditch met the shore of the 'Great Pond' as it was in 1805 . . . ." When the area identified in the language of that deed is located on the map of Gardner Lake that the defendant had filed with the court, it is apparent that that area lies entirely within the town of *Bozrah*, approximately 2000 feet to the east of the defendant's property. The subaqueous land at issue in the present case, however, lies entirely within the town of *Salem*, well to the west of the area identified in the language of the deed on which the trial court relied. Moreover, the map that the defendant submitted indicates that the plaintiff is the owner of approximately 36.7 acres of lake bottom in the town of Bozrah; the ownership of the remaining lake bottom, which includes approximately 287.1 acres in the town of Salem, is not specified. Thus, the deed language on which the trial court relied does not support its determination that the plaintiff is the owner of the subaqueous land below the defendant's dock.[7]

The trial court's reliance on the arbitration decision also was misplaced. As we have explained, the parties submitted only two issues to arbitration, namely, the location of the parties' east/west boundary line and the extent of the defendant's frontage on Gardner Lake. As the trial court expressly acknowledged, neither of these two issues required the arbitrator to make any finding with respect to the ownership of any subaqueous land,

---

[7] The plaintiff also claims that he owns the subaqueous land in dispute because, under the boundary line agreement, the defendant quitclaimed his interest in that land to the plaintiff. The defendant never has claimed any interest in that subaqueous land, however, and the plaintiff has not established that the defendant owned the land prior to the parties' boundary line agreement. It is well settled that a quitclaim deed only conveys to the grantee whatever interest the grantor has in the property. See General Statutes § 47-36f (quitclaim deed "has the force and effect of a conveyance to the releasee of all the releasor's right, title and interest in and to the property described therein").

and the arbitrator made no such finding.[8] See *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 454, 747 A.2d 1017 (2000) ("The submission constitutes the charter of the entire arbitration proceedings and defines and limits the issues to be decided. . . . When the parties have agreed to a procedure and have delineated the authority of the arbitrator, they must be bound by those limits." [Internal quotation marks omitted.]). Consequently, the arbitration decision provides an inadequate foundation for the trial court's conclusion that the plaintiff had established ownership of the subaqueous land in dispute.[9]

The plaintiff nevertheless claims that a letter, dated September 8, 1998, sent by his attorney, Philip M. Block, to the defendant, concerning the defendant's allegedly improper use of the plaintiff's property, supports the plaintiff's claim that the arbitration did, in fact, resolve the issue of the plaintiff's ownership of the lake bottom on which the defendant's dock rests. In particular, the plaintiff relies on that portion of the letter providing that the plaintiff "believes that [the defendant has] improperly encroached upon [the plaintiff's] property,

[8] As we previously have indicated, the trial court also noted, with respect to the arbitration proceeding, that "[t]he plaintiff's ownership of the lake bottom was never in dispute and the defendant ha[d] made no claim of ownership of the lake bottom." Because the ownership of the lake bottom was not the subject of the arbitration, the fact that the defendant did not expressly raise that issue in connection with that proceeding is not tantamount to a concession by the defendant that the plaintiff owns the lake bottom. Moreover, there is nothing in the record of this appeal to indicate that the defendant ever has conceded ownership of the lake bottom to the plaintiff. Finally, although it is true that the defendant never has claimed ownership of any subaqueous land, the issue raised by the present appeal is not whether the defendant has established that he owns the lake bottom on which the dock rests but, rather, whether the plaintiff has established that *he* owns it.

[9] Because ownership of the lake bottom was not an issue in the arbitration proceeding, we reject the plaintiff's argument that the trial court's judgment may be affirmed on the alternate ground that the doctrines of res judicata and collateral estoppel preclude the litigation of that issue in the present case.

both by the placement of fill, a trailer *and the construction of a boat dock.*" (Emphasis added.) Because the arbitration followed the defendant's receipt of this letter and the plaintiff's commencement of his 1999 action against the defendant to resolve the parties' prior boundary dispute, the plaintiff claims that it is clear that the defendant's installation and use of the dock was the subject of the arbitration. This argument fails for two reasons. First, as we have explained, the parties' arbitration agreement did not purport to address the issue of the ownership of any subaqueous land, including the subaqueous land at issue in the present case. Because the arbitration agreement, and not Block's letter to the defendant, specified the issues to be resolved by the arbitration, Block's reference to the dock in that letter is immaterial as to whether the arbitration proceeding encompassed the propriety of the defendant's use of such land. Moreover, as the defendant notes, under the terms of the arbitration agreement, the dock was relevant to the parties' prior dispute but only insofar as the dock is secured to the shoreline that lies within the wedge-shaped parcel of property that was the subject of that arbitration. For this reason, as well, Block's reference to the dock in his letter to the defendant reasonably cannot be construed as evincing the parties' intent to include in the arbitration a determination regarding the ownership of the subaqueous land abutting that wedge-shaped parcel of property.

The plaintiff also submitted several other documents in support of his motion for summary judgment. These documents included: (1) the deed to the defendant's property; (2) a letter from Charles J. Reed, director of the division of land acquisition and management of the state department of environmental protection, to the plaintiff's counsel disavowing, on behalf of the state, any ownership interest in the subaqueous land at issue; see footnote 5 of this opinion; (3) a "surveyor's affida-

vit" signed by Michael L. Tarbell concerning the owner-
ship of the subaqueous land in dispute; (4) a letter
from attorney John W. Butts to the plaintiff's counsel
regarding the status of the title to the property that was
the subject of the parties' prior boundary dispute; (5)
a letter to the plaintiff's counsel from Elaine M. Zavis-
toski of CentralConn Titles concerning the ownership
of certain land situated southerly and southeasterly of
the property that was the subject of the parties' prior
boundary dispute; and (6) a purported offer by the plain-
tiff to sell to the defendant the right to install a dock
or docks on the subaqueous land at issue. The plaintiff
asserts that these materials, without more, are adequate
to establish that he is the owner of the subaqueous land
on which the dock rests. The defendant claims to the
contrary. For the following reasons, we agree with
the defendant.[10]

The defendant's deed confirms that his property runs
along the shoreline of Gardner Lake in the town of
Salem, but it contains no reference to any subaqueous
land. Thus, although the defendant's deed supports the
plaintiff's contention—which the defendant does not
dispute—that the *defendant* is not the owner of the
subaqueous land at issue, the deed fails to establish
who *is* the owner of that land. The letter from the
department of environmental protection disclaiming
any state interest in the subaqueous land likewise is
proof only that the state is not the owner of that land; the
letter does not establish that the plaintiff is the owner.

The February 9, 2000 letter that Butts issued to the
plaintiff's counsel was sent during the pendency of the
prior arbitration proceeding and sets forth Butts' opin-

[10] In his brief filed with this court, the plaintiff does not attempt to rebut
the arguments that the defendant raises in support of his contention that
these additional materials provide an inadequate basis for the trial court's
conclusion that there is no genuine issue of material fact with respect to
the plaintiff's ownership of the subaqueous land in dispute.

ion regarding the ownership of the property that was the subject of that arbitration. In particular, the letter refers to the parties' dispute "concerning lake frontage immediately to the west" of the plaintiff's property. The land in dispute in the arbitration proceeding, however, was the wedge-shaped piece of property along the parties' east/west boundary line, not the lake bottom below the defendant's dock. Accordingly, Butts' letter is inadequate to prove that the plaintiff owns the subaqueous land.

The letter from Zavistoski of CentralConn Titles also is inadequate to establish the plaintiff's ownership of the subaqueous land at issue. That letter, which is dated September 24, 2002, states that, in Zavistoski's opinion, the plaintiff owns "the parcel in question," which includes certain land extending beyond the shoreline, underwater. Zavistoski identifies the land in question as "land situated southerly and southeasterly of the subject-matter of [the] [b]oundary [l]ine [a]greement" of the parties. Zavistoski's opinion, like the conclusion of the trial court, however, is predicated on language in the plaintiff's deed describing property located in the town of Bozrah rather than in the town of Salem, where the dock is located.

The affidavit of Tarbell, a land surveyor who drafted the plan that accompanied the parties' boundary line agreement, also is insufficient to support the trial court's conclusion that the plaintiff owns the lake bottom beneath the defendant's dock. Although Tarbell expresses the view that the plaintiff owns that subaqueous land, his opinion is founded, in large measure, on Butts' and Zavistoski's opinions, which, as we already have determined, are themselves reasonably subject to question. For the same reasons that the opinions of Butts and Zavistoski are insufficient to remove any legitimate doubt regarding the plaintiff's ownership of the

subaqueous land in question, we also conclude that the Tarbell's affidavit is not dispositive of that issue.

The plaintiff finally contends that the trial court's conclusion is supported by a written offer that the plaintiff had made to the defendant to sell the defendant a license to install a dock or docks on the land where the defendant's dock now rests. Contrary to the plaintiff's contention, the offer is nothing more than evidence that the plaintiff himself believed, at the time he offered to sell the defendant the license, that he owned the subaqueous land in question. Consequently, the plaintiff's offer does not provide a basis for the trial court's determination that no genuine issue of material fact exists with respect to the plaintiff's ownership of the subaqueous land at issue.

We conclude, therefore, that a genuine issue of material fact exists with respect to the plaintiff's ownership of the subaqueous land on which the defendant's dock rests. In reaching that conclusion, we do not suggest that the plaintiff cannot prove his ownership of that land; indeed, he may well be able to do so. The plaintiff has failed to establish, however, that the trial court properly relied on the arbitration decision and the plaintiff's deed in reaching its determination that the plaintiff is the owner of the subaqueous land. The plaintiff also has failed to demonstrate that the other materials that he had submitted in support of his motion for summary judgment provide an alternative basis for the court's conclusion; indeed, the plaintiff has not responded to the defendant's arguments challenging the sufficiency of those documents as dispositive proof of ownership. See footnote 10 of this opinion. Accordingly, we conclude that the trial court improperly granted the plaintiff's motion for summary judgment.

The judgment is reversed and the case is remanded with direction to deny the plaintiff's motion for sum-

mary judgment and for further proceedings according to law.

In this opinion the other justices concurred.