## BANK OF NEW YORK AS TRUSTEE *v.* JOHN E. CONWAY ET AL.

Superior Court, Judicial District of Hartford

File No. CV-02-0815603S

Memorandum filed December 13, 2006

*Hunt, Leibert, Chester & Jacobson, P.C.,* for the named plaintiff.

*Pullman & Comley, LLC,* for the plaintiff Countrywide Home Loans, Inc.

*John E. Conway* and *Kathleen McGurkin,* pro se, the defendants.

HON. SAMUEL FREED, JUDGE TRIAL REFEREE. The plaintiff Countrywide Home Loans, Inc. (Countrywide), brings this mortgage foreclosure action against the named defendant, John E. Conway, and codefendant Kathleen McGurkin. On March 2, 2000, the defendants applied to American Loan Centers (American) for a refinance mortgage loan to be secured by their home at 15 Westridge Drive in Simsbury. On March 22, 2000, the closing took place, and the defendants signed a promissory note in the amount of $223,500. At the time of the closing, the named defendant did not have any ownership interest in the property and did not sign the mortgage deed. On March 27, 2000, the defendants signed and returned a document certifying that they had not exercised their right to cancel the transaction. Thereafter, on March 28, 2000, the codefendant executed a quitclaim deed conveying the property to herself and the named defendant, who added his signature to the mortgage his wife had signed on March 22, 2000.

On April 27, 2001, American assigned the loan to the plaintiff. The defendants made regular payments on the loan until December 31, 2001, after which time they have failed to make any payments. On February 4, 2002, the plaintiff sent the defendants a demand letter notifying them of their default and the loan's pending acceleration. The demand letter gave the defendants until March 6, 2002, to cure their default. On March 12, 2002, the named defendant mailed to the plaintiff a document entitled "notice of right to cancel," that he had received at closing in March, 2000, purportedly rescinding the transaction. The plaintiff did not void the credit transaction or return any money to the defendants.

On April 3, 2002, the named plaintiff, Bank of New York as Trustee, filed the present action to foreclose

on the mortgage. On April 2, 2003, the defendants filed an answer, special defenses and counterclaims. This court substituted Countrywide as the proper plaintiff on May 22, 2006, and on May 23, 2006, the plaintiff filed a motion for summary judgment as to liability only, on the following grounds: that there is no factual dispute as to ownership, default and notices under the mortgage and note; that the defendants did not validly exercise their rights to rescind the transaction; and, that the defendants' counterclaims are barred by the relevant statute of limitations. The plaintiff has submitted a memorandum of law accompanied by certified and properly authenticated exhibits in support of its motion. On August 21, 2006, the defendants filed a memorandum of law in opposition.[1]

I

DISCUSSION

"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the

---

[1] With the memorandum in opposition to summary judgment the defendants submitted unauthenticated documents this court will not consider. "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." (Internal quotation marks omitted.) *Great Country Bank* v. *Pastore*, 241 Conn. 423, 436, 696 A.2d 1254 (1997). One of the defendants' exhibits is a copy of an e-mail addressed to the named defendant from Diana McFarlin and Gregory Demanche, and is inadmissible hearsay. A second one of the defendants' exhibits is a letter addressed to the named defendant from a third party, Joseph Stafford, and is also inadmissible hearsay. "Practice Book § [17-45], although containing the phrase including but not limited to, contemplates that supporting documents to a motion for summary judgment be made under oath or be otherwise reliable. . . . [The] rules would be meaningless if they could be circumvented by filing [unauthenticated documents] in support of or in opposition to summary judgment." (Internal quotation marks omitted.) *New Haven* v. *Pantani*, 89 Conn. App. 675, 678, 874 A.2d 849 (2005).

trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) *Barrett* v. *Montesano*, 269 Conn. 787, 791, 849 A.2d 839 (2004). "[T]he genuine issue aspect of summary judgment requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred. . . . A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Citation omitted; internal quotation marks omitted.) *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 556, 791 A.2d 489 (2002).

"The courts hold the [summary judgment] movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]." *Socha* v. *Bordeau*, 277 Conn. 579, 585–86, 893 A.2d 422 (2006).

"[B]efore a document may be considered by the court in support of a motion for summary judgment, 'there must be a preliminary showing of [the document's] genuineness, i.e., that the proffered item of evidence is what its proponent claims it to be. The requirement of authentication applies to all types of evidence, including writings . . . .' Conn. Code Evid. § 9-1 (a), commentary. Documents in support of or in opposition to a motion for summary judgment may be authenticated in a variety of ways, including, but not limited to, a certified copy of a document or the addition of an affidavit by a person with personal knowledge that the offered evidence is a true and accurate representation of what its proponent claims it to be." *New Haven* v. *Pantani*, supra, 89 Conn. App. 679.

"A summary judgment, interlocutory in character, may be rendered on the issue of liability alone. . . ." Practice Book § 17-50. Additionally, "[s]ummary judgment may be granted where the claim is barred by the statute of limitations." *Doty* v. *Mucci*, 238 Conn. 800, 806, 679 A.2d 945 (1996).

## II

## THE PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE FOR A MORTGAGE FORECLOSURE

In its memorandum of law, the plaintiff argues that it has established a prima facie case for mortgage foreclosure because there are no genuine issues of material fact regarding ownership of the note and mortgage, because the defendants are delinquent on the mortgage and because the plaintiff has satisfied all conditions precedent to foreclosure. "In a mortgage foreclosure action, [t]o make out its prima facie case, [the foreclosing party has] to prove by a preponderance of the evidence that it [is] the owner of the note and mortgage and that [the mortgagee has] defaulted on the note." (Internal quotation marks omitted.) *Franklin Credit*

*Management Corp.* v. *Nicholas,* 73 Conn. App. 830, 838, 812 A.2d 51 (2002), cert. denied, 262 Conn. 937, 815 A.2d 136 (2003). Furthermore, the foreclosing party must demonstrate that all conditions precedent to foreclosure, as mandated by the note and mortgage, have been satisfied. See *Bank of America, FSB* v. *Hanlon,* 65 Conn. App. 577, 581, 783 A.2d 88 (2001).

In the present case, the plaintiff has submitted with its memorandum in support of summary judgment properly authenticated copies of the promissory note and the mortgage, each signed by both defendants. The plaintiff has also submitted an authenticated copy of the notice of default and acceleration that was mailed to the defendants. The defendants' memorandum of law in opposition to the plaintiff's motion for summary judgment does not contest that the defendants defaulted on the mortgage, that the default has not presently been cured, and that the plaintiff owns both the note and the mortgage.[2] Similarly, the defendants do not contest that they received and signed a document stating that they did not exercise their right to cancel the transaction on March 27, 2000. The plaintiff has sufficiently demonstrated that there are no genuine issues of material fact as to the ownership of the note and mortgage, and as to the defendants' status in default on the loan.

The plaintiff has also submitted evidence that it satisfied conditions precedent to foreclosure by timely mailing a notice of default and acceleration to the defendants. The note signed by the defendants provides in pertinent part: "If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full

---

[2] The plaintiff has submitted with its memorandum a certified copy of assignment documents representing that American sold the defendants' loan to it on April 27, 2001, and that the plaintiff is the sole owner of the note and mortgage.

amount of principal which has not been paid and all the interest that I owe on that amount." Similarly, the mortgage's arbitration rider states that "[the] Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this security instrument. . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified . . . may result in acceleration of the sums secured by this security instrument and foreclosure or sale of the property." The notice of acceleration mailed to the defendants on February 4, 2002, stated that the defendants were in "serious default" of $3894.45. The notice specifically instructed the defendants how to cure the default, and gave the defendants until March 6, 2002—more than one month—to cure the default. The plaintiff has satisfied the conditions precedent to foreclosing on the defendants' mortgage, and the defendants have not submitted evidence to the contrary. There are no genuine issues of material fact with respect to satisfying the conditions precedent to foreclosing on the mortgage. Consequently, the plaintiff has established a prima facie case for a mortgage foreclosure.

## III

### THE DEFENDANTS' SPECIAL DEFENSES ARE INADEQUATE AS A MATTER OF LAW

"When a complaint and supporting affidavits establish an undisputed prima facie case for a foreclosure action, a court must only determine whether [a] special defense is legally sufficient before granting summary judgment." *LaSalle National Bank* v. *Shook*, Superior Court, judicial district of New London, Docket No. 549266 (July 13, 2000) (*Martin, J.*), aff'd, 67 Conn. App.

93, 787 A.2d 32 (2001). "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . A valid special defense at law to a foreclosure proceeding must be legally sufficient and address the making, validity or enforcement of the mortgage, the note or both. . . . Where the plaintiff's conduct is inequitable, a court may withhold foreclosure on equitable considerations and principles." (Internal quotation marks omitted.) *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 705, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002). "[S]pecial defenses which are not limited to the making, validity or enforcement of the note or mortgage fail to assert any connection with the subject matter of the foreclosure action and as such do not arise out of the same transaction as the foreclosure action." (Internal quotation marks omitted.) *Eastern Savings Bank, FSB* v. *Mara*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-05-4006305 (June 5, 2006) (*Dooley, J.*).

The defendants have raised five special defenses. The first special defense alleges that the defendants rescinded the contract on March 12, 2002, thereby automatically voiding the plaintiff's security interest. The second special defense alleges that the plaintiff violated the federal Truth in Lending Act (act); 15 U.S.C. § 1601 et seq.; by failing to terminate the security interest within twenty days of the plaintiff's receipt of the notice of rescission. The third special defense alleges that the plaintiff failed to return any money or property after the rescission, as required by the act. The fourth special defense alleges that the plaintiff failed to disclose a recording fee, in violation of the act. The fifth special defense alleges that the plaintiff failed to disclose and understated a finance charge, thereby violating the act. The court will consider each of these special defenses in turn.

"The federal Truth in Lending Act . . . was enacted as part of the Consumer Credit Protection Act of 1968, and is codified at 15 U.S.C. § 1601 et seq. The purpose of [the act] is to promote the informed use of consumer credit by requiring disclosures about its terms and cost. . . . Title 15 of the United States Code, § 1604 provides that [t]he Board [of Governors of the Federal Reserve System] shall prescribe regulations to carry out the purposes of this title [15 U.S.C.S. § 1601 et seq.] That board has promulgated . . . regulations, known as Regulation Z, which are codified at 12 C.F.R. § 226.1 et seq." (Citation omitted; internal quotation marks omitted.) *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 96–97, 612 A.2d 1130 (1992). The Connecticut legislature has enacted a truth in lending act generally coextensive with the federal act, as "General Statutes §§ 36a-677 (c) and 36a-678 (b) provide that Connecticut's [act] is subject to the federal [act] . . . to avoid duplication in administration and enforcement of statutes."[3] (Internal quotation marks omitted.) *Thanhauser* v. *Nemickas*, Superior Court, judicial district of Danbury, Docket No. CV-01-0341880S (November 28, 2001) (*Holden, J.*). Because the federal and Connecticut acts are generally coextensive, this court will incorporate federal case law interpreting relevant provisions of the act where there is an absence of Connecticut authority.

Connecticut has expressly incorporated the federal rescission right into its act. See General Statutes § 36a-683 (j) (1). The limited right of rescission in a consumer credit transaction generally allows the consumer to rescind the agreement "until midnight of the third business day following the consummation of the transaction

---

[3] General Statutes § 36a-678 (a) provides: "Except as otherwise provided in sections 36a-675 to 36a-685, inclusive, or regulations adopted by the commissioner, each person shall comply with all provisions of the Consumer Credit Protection Act (15 USC § 1601 et seq.) which apply to such person."

. . . ." 15 U.S.C. § 1635 (a). If the creditor fails completely to provide a rescission notice to the consumer, the consumer has an extended period of three years after the consummation date in which to rescind a consumer credit transaction. See General Statutes § 36a-683 (j) (3).[4]

In its memorandum in support of the motion for summary judgment, the plaintiff argues that no valid rescission occurred because the named defendant's rescission was tardy and he was not entitled to receive any extended right of rescission. The defendants counter that their March 12, 2002 rescission was proper[5] because they were entitled to an additional rescission notice when the named defendant added his signature to the mortgage on March 28, 2000. The defendants further argue that the new signature constituted a "separate transaction" under the act, thereby giving the defendants an extended period of three years to rescind the transaction.

In the present case, there is no dispute that American gave the defendants notice of their right to rescind

[4] This court notes that, for purposes of the present case, this is the only relevant exception to the general one year statute of limitations imposed by the act under 15 U.S.C. § 1640 (e).

[5] The defendants also argue, for the first time in their memorandum in opposition to summary judgment, that the rescission was valid because American failed to deliver all material disclosures and inaccurately calculated the rescission deadline, thereby granting the defendants a default period of three years in which to rescind the agreement. The court is not required to reach the merits of arguments raised for the first time in a memorandum in opposition to summary judgment. See *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 607, 894 A.2d 335, cert. granted on other grounds, 280 Conn. 901, 907 A.2d 88 (2006). Further, even if this court were to reach the merits of this argument, the defendants have failed to submit authenticated or admissible documents showing the existence of any disclosure violations or inaccurate deadlines. Therefore, the defendants are unable to establish a genuine issue of material fact to support their argument in opposition to summary judgment. Because the defendants have merely asserted conclusory facts lacking any evidentiary support, the court will not reach the merits of this argument. See *Socha* v. *Bordeau*, supra, 277 Conn. 585–86.

on March 22, 2000, and there is no dispute that the defendants did not exercise their right of rescission by the third business day afterward. To the contrary, both defendants signed a document on March 27, 2000, certifying that "the cancellation period has expired and [the defendants] have not exercised [their] right to cancel." It is also undisputed that the named defendant signed and mailed the original "notice of right to cancel" document on March 12, 2002, nearly two years after the note and mortgage were signed.

The present dispute clearly concerns when the credit transaction was consummated. The parties agree on the dates the relevant documents were signed and the date on which the proceeds of the loan were distributed. There are no disputed issues of fact. The defendants argue that the transaction was not consummated when they signed the promissory note on March 22, 2000, but when the named defendant signed the mortgage on March 28, 2000. Consequently, because of the alleged inaccurate rescission deadline of March 25, 2000, the defendants assert that the disclosure was equivalent to no disclosure at all, thereby allowing the named defendant to invoke the extended three year rescission period made available under 15 U.S.C. § 1635 (f).

Regulation Z defines consummation as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2 (a) (13). The United States Court of Appeals for the Second Circuit, in interpreting consummation under the act, has held that a "transaction is consummated when the lender and borrower sign a contract obligating them, respectively, to lend and to borrow the funds." *Murphy* v. *Empire of America, FSA,* 746 F.2d 931, 934 (2d Cir. 1984). The official staff interpretation notes that state law determines when a borrower becomes contractually obligated. 12 C.F.R. Pt. 226, Sup. I, p. 376 (2006). It is settled law in Connecticut that "[t]o form a contract, generally

there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties . . . . The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act. . . . [The] agreement . . . requires a clear and definite promise." (Citations omitted; internal quotation marks omitted.) *Bartomeli* v. *Bartomeli*, 65 Conn. App. 408, 414, 783 A.2d 1050 (2001).

In the present case, the parties do not dispute that a contract was created. Both the act's statutory language defining consummation and settled tenets of Connecticut contract formation indicate that the transaction was consummated when the contract was signed on March 22, 2000. Moreover, Connecticut law is clear that the named defendant's March 28, 2000 signature on the mortgage was not a separate transaction, thereby requiring a second notice of rescission rights. "A promissory note and a mortgage deed are deemed parts of one transaction and must be construed together as such." (Internal quotation marks omitted.) *Emigrant Mortgage Corp.* v. *D'Agostino*, 94 Conn. App. 793, 799, 896 A.2d 814, cert. denied, 278 Conn. 919, 901 A.2d 43 (2006). "A mortgage . . . is '[a] conveyance of title to property that is given as security for the payment of a debt. . . .' Black's Law Dictionary (7th Ed. 1999)." *Ankerman* v. *Mancuso*, 271 Conn. 772, 778, 860 A.2d 244 (2004). The mortgage deed in the present case, then, only created a security interest acquired for the purposes of the credit transaction. Based on the undisputed facts and law surrounding this transaction, this court finds that the loan was consummated on March 22, 2000, when the defendants signed a contract binding them to borrow and repay funds from American. The rescission deadline, therefore, expired on March 25, 2000, and was accurately listed in the loan documents. Consequently, the first special defense is inadequate as a matter of law.

The remaining special defenses assert that the plaintiff violated various provisions of the federal and state acts after the consummation of the mortgage and distribution of the proceeds. Although neither our Supreme Court nor the Appellate Court has addressed the validity of violations of the act as a special defense in mortgage foreclosure actions, several judges of the Superior Court have noted that "[a] mortgage holder's failure to comply with state and/or federal truth-in-lending requirements has been held not to constitute a legally sufficient special defense in mortgage foreclosure actions." (Internal quotation marks omitted.) *Thanhauser* v. *Nemickas*, supra, Superior Court, Docket No. CV-01-0341880S; see also *Mundaca Investment Corp.* v. *Atwood*, Superior Court, judicial district of Fairfield, Docket No. CV-94-0319174S (February 21, 1996) (*Moran, J.*); *Beneficial Mortgage Co.* v. *Brassington*, Superior Court, judicial district of Danbury, Docket No. 318933 (June 19, 1995) (*Stodolink, J.*). These courts reasoned that violations of the act "do not present a legal attack on the validity of the note or mortgage, but rather relate to the conduct of the lienholder." *Eastern Savings Bank, FSB* v. *Mara*, supra, Superior Court, Docket No. CV-05-4006305.[6]

The defendants assert in the second and third special defenses, respectively, that the plaintiff violated the act

---

[6] This court notes that while this line of Superior Court decisions addressed motions to strike rather than motions for summary judgment, "the use of a motion for summary judgment to challenge the legal sufficiency of a complaint is appropriate when the complaint fails to set forth a cause of action and the [moving party] can establish that the defect could not be cured by repleading. . . . If it is clear on the face of the complaint that it is legally insufficient and that an opportunity to amend it would not help the [nonmoving party], [the court] can perceive no reason why the [moving party] should be prohibited from claiming that he is entitled to judgment as a matter of law . . . ." (Citations omitted.) *Larobina* v. *McDonald*, 274 Conn. 394, 401, 876 A.2d 522 (2005). In the present case, it is clear that the defendants have "no further facts to allege that would cure the legal defects" in their special defenses to this mortgage foreclosure action. Id., 403.

in failing to terminate the security interest after receipt of the defendants' March 12, 2002 notice of rescission, and that the plaintiff violated the act in failing to return any money or property within twenty days following receipt of the notice of rescission. The plaintiff counters that the named defendant was not entitled to rescind the transaction, as the deadline to rescind had expired. Judges of the Superior Court have noted that the timing of a violation of the act often precludes recovery, as "[c]onduct of the lender *after* execution of the mortgage generally may not be asserted as a special defense in a mortgage foreclosure." (Emphasis added.) *Southern Pacific Bank* v. *Reed*, Superior Court, judicial district of Fairfield, Docket No. CV-98-0352767 (January 21, 2000) (*Mottolese, J.*).

This court finds that the second and third special defenses do not relate to "the making, validity or enforcement of the mortgage"; *Fidelity Bank* v. *Krenisky*, supra, 72 Conn. App. 705; and are invalid as a matter of law. Rather, these special defenses relate only to American's conduct in failing to recognize a purported rescission two years subsequent to the consummation of the mortgage and fail to present "any connection with the subject matter of the foreclosure action." *Eastern Savings Bank, FSB* v. *Mara*, supra, Superior Court, Docket No. CV-05-4006305. While it is true that "[t]he failure of the plaintiff to accept the *valid* rescission by the defendant [nullifies] the plaintiff's security interest"; (emphasis added) *Family Financial Services, Inc.* v. *Spencer*, 41 Conn. App. 754, 770, 677 A.2d 479 (1996); the rescission in the present case was nearly two years tardy, and, therefore, invalid. The second and third special defenses are legally insufficient to withstand this motion for summary judgment.

The defendants allege in the fourth special defense that American violated the act in failing to disclose an $80 recording fee, and, in the fifth special defense, that

American failed to disclose and "padded" a \$475 appraisal fee. The plaintiff counters that the assertions are false, but that, even if true, the allegations would not defeat its right to foreclose as a matter of law. This court finds additional support that special defenses under the act are inappropriate in a mortgage foreclosure action through an analysis of the act's damage provisions made available to consumers for a creditor's failure to disclose. Under 15 U.S.C. § 1640 (a) (1), damages for violations of the act's provisions are limited to the "actual damage sustained" or statutory penalties not to exceed \$2000. Importantly, no portion of the civil liability provisions of 15 U.S.C. § 1640 provides the consumer with a right to invalidate the entire transaction on the basis of a creditor's failure to disclose.

This court agrees with the numerous judges of the Superior Court who have considered this issue and adopts the reasoning expressed in *Eastern Savings Bank, FSB*. Violations of the act's disclosure provisions are not valid special defenses in a mortgage foreclosure action because such violations do not relate to "the validity of the note or mortgage, but rather relate to the conduct of the lienholder." *Eastern Savings Bank, FSB* v. *Mara*, supra, Superior Court, Docket No. CV-05-4006305. Even if taken as true, the defendants' allegations in the fourth and fifth special defenses would not vitiate the plaintiff's cause of action, as is necessary in a valid special defense. See *Fidelity Bank* v. *Krenisky*, supra, 72 Conn. App. 705. Consequently, the fourth and fifth special defenses are inadequate as a matter of law.

## IV

### THE DEFENDANTS' COUNTERCLAIMS ARE TIME BARRED[7]

"[A]ny party may move for summary judgment upon any counterclaim . . . as if it were an independent

---

[7] On September 23, 2003, this court granted the plaintiff's motion to strike counterclaims three and four, alleging, respectively, damage to credit and emotional distress. There are two counterclaims remaining before the court.

action." Practice Book § 17-44. "Because a counterclaim is a separate and distinct action . . . a party seeking summary judgment on both a complaint and a counterclaim must file an appropriate motion addressed to each." (Citations omitted; internal quotation marks omitted.) *Miller* v. *Bourgoin*, 28 Conn. App. 491, 500, 613 A.2d 292, cert. denied, 223 Conn. 927, 614 A.2d 825 (1992). The first remaining counterclaim seeks termination of the security interest and damages for the plaintiff's alleged failure to accept the defendants' March 12, 2002 rescission notice, while the second counterclaim seeks termination of the security interest and damages for the plaintiff's alleged failure to disclose a finance charge. The plaintiff argues that both counterclaims are time barred.

The defendants' first counterclaim alleges that the plaintiff violated the act by failing to accept the named defendant's March 12, 2002 rescission. This court previously ruled in part III of this memorandum of decision that the rescission deadline expired three days after the defendants signed the promissory note, thereby consummating the loan on March 22, 2000. Even assuming, arguendo, that the transaction was consummated on March 28, 2000, and that the plaintiff's predecessor failed to give proper disclosures, the rescission was still tardy. The United States Supreme Court has held that the act "permits no federal right to rescind, defensively *or otherwise*, after the 3-year period of [15 U.S.C.] § 1635 (f) has run." (Emphasis added.) *Beach* v. *Ocwen Federal Bank*, 523 U.S. 410, 419, 118 S. Ct. 1408, 140 L. Ed. 2d 566 (1998). In a recent case interpreting the Supreme Court's language in *Beach*, the United States Court of Appeals for the Ninth Circuit stated that "[15 U.S.C.] § 1635 (f) is a statute of repose, depriving the courts of subject matter jurisdiction when a [15 U.S.C.] § 1635 claim is brought outside the three-year limitation period." *Miguel* v. *Country Funding Corp.*, 309 F.3d

1161, 1164 (9th Cir. 2002), cert. denied sub nom. *Bank of New York, Trustee*, 539 U.S. 927, 123 S. Ct. 2577, 156 L. Ed. 2d 604 (2003). Even if the transaction was consummated on March 28, 2000, the defendants would have had to file any claim under 15 U.S.C. § 1635 no later than March 28, 2003. The rescission counterclaim was filed on April 2, 2003, which is three years and five days past the defendants' alleged consummation date of March 28, 2000. Because this counterclaim was filed after the expiration of the statute of limitations, this court is deprived of subject matter jurisdiction.

The defendants' second counterclaim arises from the alleged failure of the plaintiff's predecessor to disclose an $80 recording fee and the alleged padding of a $475 appraisal fee. Again, the defendants failed to submit authenticated or admissible evidence in support of these allegations but assert, nonetheless, that the finance charge, the amount financed and the annual percentage rate were inaccurate and the material disclosures were not delivered as required. Section 1640 (e) of title 15 of the United States Code states that "[a]ny action [for failure to comply with any requirement imposed by the act] may be brought . . . within one year from the date of the occurrence of the violation."

The defendants argue that the disclosure violations occurred not when the transaction was settled, but rather when American failed to honor the rescission request, asserting that the "violation," for purposes of 15 U.S.C. § 1640 (e), took place on April 4, 2002, which is the twenty-first day after the plaintiff failed to respond to the named defendant's notice of rescission. This is an incorrect interpretation of the act.[8] Section 1638 (b)

---

[8] This court can find no authority, and the defendants have cited none, for the contention that the statute of limitations for a violation of the act's disclosure provisions begins to run only after the borrower rescinds the credit transaction and the creditor fails to honor the rescission. Rescinding a consumer credit transaction under 15 U.S.C. § 1635 (a) is not a prerequisite to claiming a violation of the act's disclosure provisions pursuant to 15 U.S.C. § 1640 (e).

(1) of title 15 of the United States Code provides that "the disclosures . . . shall be made before the credit is extended." The United States Court of Appeals for the Ninth Circuit recently noted that "[t]here is some debate on whether the period of limitations commences on the date the credit contract is executed . . . or at the time the [borrower] discovered, or should have discovered, the acts constituting the violation." (Citation omitted.) *Meyer* v. *Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003). In affirming the District Court's granting of summary judgment in favor of the creditor on the grounds that the act's statute of limitations had run, the *Meyer* court stated: "The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The [consumers] were in full possession of all information relevant to the discovery of a [violation of the act] . . . on the day the loan papers were signed. The [consumers] have produced no evidence of undisclosed credit terms, or of fraudulent concealment or other action on the part of [the creditor] that prevented the [consumers] from discovering their claim." Id.

The *Meyer* court's analysis is persuasive on the issue raised before this court in the defendants' second remaining counterclaim. The defendants signed the loan documents on March 22, 2000, and, as in *Meyer*, have produced no admissible evidence of any failure to disclose, padding of any fees or inaccurate finance charges. "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in a motion for summary judgment]." (Internal quotation marks omitted.) *Socha* v. *Bordeau*, supra, 277 Conn. 586. The present counterclaim was filed on April 2, 2003, thereby surpassing the one year statute of limitations. Even construing the evidence most favorably to the defendants, this court is deprived of subject matter jurisdiction on the defendants' second counterclaim.

## V

## CONCLUSION

Viewing the evidence in the light most favorable to the nonmoving party, the plaintiff has shown the absence of genuine issues of material fact, and the defendants have not provided an evidentiary foundation to demonstrate the existence of genuine issues of material fact. The plaintiff has established a prima facie case for mortgage foreclosure, and the defendants' special defenses are inadequate as a matter of law. Further, even viewed in the light most favorable to the defendants, the plaintiff has also established that the defendants' counterclaims are barred by the relevant statute of limitations. Accordingly, the plaintiff's motion for summary judgment as to liability only is granted.