EDWARD SOCHA, JR. *v.* SCOTT BORDEAU*

Superior Court, Judicial District of New London at Norwich
File No. KNL-CV-01-0122572S

Memorandum filed September 13, 2007

*Philip Block*, for the plaintiff.

*Brown Jacobson, P.C.*, for the defendant.

LEUBA, J. This vigorously contested matter was the subject of a trial to the court relating to the claim of the plaintiff, Edward Socha, Jr., for trespass and for an injunction. The writ of summons and complaint was

---

* Affirmed. *Socha* v. *Bordeau*, 289 Conn. 358, 956 A.2d 1174 (2008).

filed in 2001, alleging among other things that the defendant, Scott Bordeau, constructed and maintained a dock on property the plaintiff owned under the water in front of the defendant's upland property. Earlier, the case was the subject of a summary judgment ruling in the plaintiff's favor, which was appealed to the Supreme Court where the summary judgment was reversed and the case remanded. *Socha* v. *Bordeau*, 277 Conn. 579, 893 A.2d 422 (2006).

## I

## PLEADINGS

The plaintiff amended the complaint on June 12, 2003, adding a second count relating to the state of Connecticut's interest or lack of interest in the matter, but that claim was dismissed by consent on January 5, 2004. The defendant has denied the allegations of the complaint relating to the claimed trespass.

## II

## ISSUE

The issue concerns the plaintiff's ability to establish title to the land under the water where the defendant's dock is located.

## III

## FACTS

At the trial, the plaintiff offered testimony from the plaintiff and two expert witnesses, Michael L. Tarbell, a land surveyor, and John W. Butts, an attorney and title searcher. The defendant called one witness, Robert Mullen, an expert in land surveying. In addition, the parties offered several exhibits, including the deeds of the parties and several maps.

From the evidence presented, and the reasonable inferences from the evidence, and taking into account

the court's evaluation of the credibility of the witnesses, the following facts are found relevant to the court's conclusions.

The plaintiff owns property abutting Gardner Lake, portions of which are located in the towns of Bozrah and Salem. The plaintiff obtained title to this property in 1989, by quitclaim deed from his parents, Edward Socha and Josephine Socha. The plaintiff's parents, in turn, obtained title to the property by a quitclaim deed from The Falls Company, dated December 23, 1958. The plaintiff operates a commercial marina on a portion of his property, giving docking and beach rights to his customers for which he charges fees.

Each of those deeds (hereinafter jointly referred to as the Socha deeds) provides an essentially identical description of the portion of the plaintiff's property in the vicinity of Gardner Lake, which relates to the issues in this case as follows: "[T]hence continuing Southwesterly into the Lake and following the line of said old ditch which is now under water about 350 feet to the point where the old ditch met the shore of the 'Great Pond' as it was in 1805; thence in a Westerly, Southwesterly, Northwesterly direction along the shore line of the 'Great Pond' about 2,750 feet to the mouth of the brook that empties out of the swamp; thence Westerly along the said shore line about 1,200 feet to the edge of the swamp at land formerly of the Estate of Samuel Ray; thence along the edge of the swamp . . . ." The Socha deeds also provide that the parcels described "are as shown on a plan entitled 'Falls Company, Gardner's Lake Property, Scale 1 inch equals 100 feet, Chandler & Palmer, Engineers, 1909 with Additions December 1958.' " That plan (hereinafter referred to as the Falls Company map) is a copy of the specific map referenced in the Socha deeds. Both of the Socha deed descriptions omit a critical course, which means the description does not close. This omission is in the area

of the plaintiff's property under the lake in the vicinity of the defendant's property.

The location of the shoreline of Gardner Lake is essentially the same today as it was in 1909, when the Falls Company map was drawn. In 1805, however, Gardner Lake was smaller than it was in 1909, resulting in what was the 1805 shoreline being now submerged beneath the waters of the present lake. The increase in the size of Gardner Lake was caused by the construction of a dam sometime in the 1800s.

The defendant obtained his property in 1994, by deed from Charles H. Lewis, Jr., the administrator of the estate of Hellen Lucille Lewis. The portion of the defendant's deed description directly relevant to this case provides as follows: "[Thence] to land now or formerly of Falls Company; thence 1,195 feet more or less in an irregular line along the edge of a swamp and in a southerly and southeasterly direction to the shore of Gardner Lake; thence southerly along the shore of Gardner Lake to an iron pipe; thence [northerly] . . . ."

This property was formerly the property of the estate of Samuel Ray and is referenced in that manner in both the Socha deeds and on the Falls Company map. While the deed to the defendant conveys title to property "along the shore of Gardner Lake," the deed and maps do not indicate, nor did any of the parties or witnesses contend, that the defendant ever owned any property under the waters of Gardner Lake and it is found that he does not.

In connection with an earlier dispute concerning their common upland boundary line, the parties ultimately entered into a boundary line agreement. The boundary thus determined was illustrated in a boundary line agreement plan, which established that the defendant owns about seventy-three feet of frontage on Gardner Lake. Neither party obtained ownership of the land

under the waters of Gardner Lake by virtue of the boundary line agreement.

Tarbell, a surveyor engaged by the plaintiff, presented testimony attempting to establish the ownership of the land under the defendant's dock by research and review of records, maps, deeds and other sources. He had personal knowledge of the lake from using it over the years. He acknowledged that the deed descriptions of the Socha deeds were flawed. In his testimony he phrased it that "[t]here's a course missing or a direction missing that takes us back out of the lake . . . ." The missing course, depending on where it is reconstructed or located, could either put the defendant's dock on the plaintiff's property or off the plaintiff's property. This, then, is a critical omission from the point of view of this particular case.

In the map that Tarbell prepared, he suggested the location of two possible lines that might have been intended to "close" the description. These alternatives, which he referred to as "scenarios," are shown as dotted lines on the map. He testified on cross-examination that these two scenarios assumed various factors that were by no means certain, such as the direction of an underwater ditch that was never found and the height of the water in the lake at various intervals. To arrive at these assumptions he testified that "something has to yield" in the deed. When asked to select one of the alternatives on his plan, the surveyor selected the shorter line, to the right, as his preference. The map or plan is neither signed nor certified by Tarbell.

There is no credible evidence as to the ownership of the land under the water upon which the defendant has built a dock. There is no evidence as to the specific location of the defendant's dock. None of the maps or plans in evidence attempt to show the location of the

defendant's dock, either as it relates to the two "scenarios" of Tarbell or otherwise.

Mullen, the defendant's surveyor, differed as to the appropriate reading of the map referred to in the Socha deeds, the map that attempted to resolve the question posed by the omission in the description. Although he did not disagree with Tarbell's procedure, he did not agree with Tarbell's assumptions and had a different reading as to the "missing" line.

Butts' testimony was based on a title search performed in approximately 1999, in connection with the parties' earlier boundary line dispute. The title search performed by Butts on the portion of the property located adjacent to the defendant's property revealed a gap in the chain of title from approximately 1830 through 1909. When Butts was asked to select one of Tarbell's proposed alternative lines, based upon that title search, he selected the longer line, to the left, as his preference. There was no credible evidence as to the ownership of the land under the waters of Gardner Lake adjacent to the defendant's seventy-three foot frontage.

No evidence was offered as to the possession or use, actual or constructive, of the subaqueous land adjoining the defendant's frontage on Gardner Lake, except for the defendant's dock at an unspecified location in that area.

## IV

## THE LAW

The Supreme Court in its earlier view of this case has provided much of the law required to resolve the issues raised: "[W]hen both damages for trespass and an injunction are sought and the answer is a general denial, both title to the disputed area and possession are placed in issue. *Wadsworth Realty Co.* v. *Sundberg,*

165 Conn. 457, 461, 338 A.2d 470 (1973). Because [t]itle is an essential element in a plaintiff's case, [when] an injunction is sought to restrain a trespass . . . *Velsmid* v. *Nelson*, 175 Conn. 221, 224, 397 A.2d 113 (1978); a party claiming title must rely on the strength of his own title and not on the weakness of the title of another. Id., 229. Moreover, because trespass is a possessory action, it is incumbent on the plaintiff to prove possession, actual or constructive, in order to prevail. *Wadsworth Realty Co.* v. *Sundberg*, supra, 461. Consequently, if [the plaintiff] seeks to enforce his rights by a mandatory injunction, he must show actual possession in himself, since injunctive relief cannot be used to take property out of the possession of one person in order to put it into the possession of another. *More* v. *Urbano*, 151 Conn. 381, 383–84, 198 A.2d 211 (1964). Finally, when the issue of title or ownership is directly involved, the proper way to prove title is by the production of the original documents or certified copies from the record. . . . *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 703, 780 A.2d 1 (2001)." (Internal quotation marks omitted.) *Socha* v. *Bordeau*, supra, 277 Conn. 586–87.

In addition, the evidence suggests other rules also may have application. In order to sustain his burden of proof with respect to title and possession, the plaintiff must remove the issue from the realm of surmise, guess, conjecture and speculation. *Gothreau* v. *New York, N.H. & H.R. Co.*, 148 Conn. 65, 67, 167 A.2d 244 (1961).

"A plaintiff can recover only by proving that he himself is entitled to prevail on the cause of action alleged. It is not enough that he prove that some other person, not a party to the case, would be entitled to recover on that cause of action." (Internal quotation marks omitted.) *CAS Construction Co.* v. *East Hartford*, 82 Conn. App. 543, 558, 845 A.2d 466 (2004).

"[A] reference to [a] map in [a] deed, [f]or a more particular description, incorporates [the map] into the deed as fully and effectually as if copied therein." (Internal quotation marks omitted.) *Schwartz* v. *Murphy*, 74 Conn. App. 286, 291, 812 A.2d 87 (2002), cert. denied, 263 Conn. 908, 819 A.2d 841 (2003). "[T]he identifying or explanatory features contained in maps referred to in a deed become part of the deed, and so are entitled to consideration in interpreting the deed . . . ." Id. In accordance with the foregoing rules, "the general description in the text of the deed must yield to the more specific description in the survey map incorporated into the deed by explicit reference thereto." Id., 293.

Where the description of the land that is conveyed by a deed is ambiguous, the court must attempt to ascertain what it was that the parties intended to convey. "The question is not what did the parties actually mean to say, but what is the meaning of what they have said." (Internal quotation marks omitted.) *Faiola* v. *Faiola*, 156 Conn. 12, 17, 238 A.2d 405 (1968).

V

CONCLUSION

The plaintiff has not sustained his burden of proof either with respect to his alleged title to the subaqueous land in question or with respect to the possession of it. He cannot recover in a trespass action based upon the weakness of the defendant's title. Moreover, there is no evidence as to the specific location of the defendant's dock except that it adjoins the defendant's upland at some point. None of the evidence offered to locate the missing course in the plaintiff's deed provides the court with sufficient certainty to satisfy the plaintiff's burden or to permit the court to provide the missing course.

The defendant did not violate the agreement with respect to arbitration, which the court finds was not relevant to the title to the subaqueous land.

Therefore, applying the law to the facts found, the plaintiff's request for a permanent injunction is denied, and judgment may enter in favor of the defendant, with costs.